## KEMPNER v. COHN.

1. CONTRACTS: *Conducted by mail; When completed.*
   When parties conduct a negotiation through the mail a contract is completed the moment a letter accepting the offer is mailed, provided it be done with due diligence after receipt of the letter containing the proposal and before any intimation is received that the offer is withdrawn.

2. SAME: *Same.*
   Whether an offer remains open is a question of fact. When an answer by return mail is requested, or may be expected by the usage of trade or the nature of the business, the making of the offer is accompanied by an implied stipulation that the answer shall be immediate. But unless the time is limited the proposition is open until it is accepted or rejected, provided an answer is given in a reasonable time.

3. SAME: *Withdrawal of offer.*
   An offer made by letter which is to be answered in the same way, cannot be withdrawn unless the withdrawal reaches the party to whom it is addressed before he has accepted. An uncommunicated revocation is no revocation at all. ✓

4. DAMAGES: *For breach of contract to convey.*
   In an action by a purchaser of land for breach of the contract to convey, the measure of damages is the difference between the contract price and the value of the land when the breach occurred, with interest on such difference.

APPEAL from *Pulaski* Circuit Court.

Hon. F. T. VAUGHAN, Circuit Judge.

*J. H. Harrod* for Appellant.

1. It was error to allow plaintiff the expenses of investigating the title, before he had definitely accepted the offer, i. e., abstract of title and attorney's fee. *Woods Mayne on Damages,* sec. 233, *p. 170.* It was also error to allow him for interest lost on his uninvested money. The true rule as to the amount of damages recoverable in case of failure to convey, is the difference between the *contract price* and the *actual value* of the property at the date of contract of sale. *8 Am. Law Reg., N.*

*S., p. 570; Pringle v. Spaulding, 53 Barb.* Probable profits and speculative damages are not allowed. *1 Pac. Rep., 435.*

2. Appellant submits: First, that the evidence in this case does not show a *contract* between the parties; second, that if there was a definite and certain acceptance of Kempner's offer by Cohn, that that acceptance was not made within a *reasonable time* and did not bind Kempner.

The first proposition depends upon the construction given to Cohn's letter of the 7th of February.

If that letter was an acceptance of appellant's offer then there was a contract. It is settled by all authorities that to make an acceptance of an offer bind the party making it, the offer must be accepted unconditionally and without modification or qualification.

When the answer departs from the proposition either in words or effect, or varies the offer, there is no contract. *Parsons on Contracts, 6 ed., vol. 1, *p. 477.*

"The respondent can accept wholly, or reject wholly, but one of these things he must do." *Ibid.*

An answer has sometimes been held insufficient to make a contract when the difference in terms between the parties did not seem to be very important. In fact the court seldom inquires into the magnitude or effect of the diversity; if it exists, that fact is enough. *Parsons on Contracts, 6 ed., vol. 1,* *pp. 477–8.*

As to what is a *reasonable* time, see *12 Conn., 423; 26 Ohio St., 334; 10 Wall., 129.*

3. If Kempner rescinded his offer and mailed that revocation before Cohn mailed his acceptance of the offer, there was no contract of sale. *Minor Inst. Com. and St. Law, book 3, p. 127; 1 Pick. (Mass.), 283; 6 Wend. (N. Y.), 103.*

4. There *never* was a *mutual assent* to this contract of sale at the same time. There was no meeting of minds as required by all the authorities.

*Caruth & Erb* for Appellee.

1. The expenses of investigating the title were proper elements of damage. *2 Leith on Dam., p. 217; 2 Add. on Cont., p. 63.*

2. It is contended there was no proof of acceptance. To say nothing of Cohn's verbal acceptance to A. Kempner, the bearer of defendant's proposition, which he directed Kempner to communicate to defendant, and which *defendant admits was communicated,* it is submitted that Cohn's letter of February 7th is a decided, unconditional acceptance.

3. The appellee *did* accept appellant's offer in a reasonable time. The jury found from the evidence that he did, and they were warranted in so finding. As to what is a reasonable time, depends on the circumstances of each case.

4. The court properly refused the sixth instruction asked by defendant. It is not law. *1 Parsons Cont., 6 ed., sub. p. 484; 2 Kent Com., p. 629; 1 B. & Ald., 681; Benj. on Sales, secs. 68 to 75.*

The reasoning in *McCullough v. Eagle Ins. Co.,* relied on by counsel, has been rejected by the supreme court of the United States. *Taylor v. Merchant's Fire Ins. Co., 9 How., 390; Beckwith v. Cheever, 1 Foster, (N. H.), 41; Brisbam v. Boyd, 4 Paige, 17; Averill v. Hedge, 12 Conn., 436; Mactier v. Frith, 6 Wend., 103; Levy v. Cohen, 4 Ga., 1; Chiles v. Nelson, 7 Dana, 281; Falls v. Gaither, 9 Port. (Ala.), 605; Hamilton v. Lycoming Mut. Ins. Co., 5 Pa. St., 339.*

Both the later English and American authorities sustain the view cited from Parsons.

SMITH, J. Cohn sued Kempner for the non-payment of an alleged agreement to convey a certain lot on Main street in the

city of Little Rock.    He claimed damages for the loss of his
bargain, for expenses incurred in investigating the title, for the
loss of interest upon the money which he had raised by the
sale of interest-bearing securities in order to comply with the
terms of purchase and which he had been unable immediately
to reinvest to his satisfaction, and for the loss of a profitable
lease of the lot which he had made on the faith of getting
the lot.

The answer denied the existence of any contract between
the parties for the sale of the lot.    Upon a trial before a jury,
the plaintiff recovered a verdict and judgment for $611.50.
The assignments in the motion for a new trial were, the ad-
mission of improper evidence, the refusal of the court to give
a certain charge to the jury and want of evidence to sustain
the verdict.

The plaintiff lived in Little Rock, the defendant at Hot
Springs.    The two cities are about sixty miles apart and there
is communication by mail twice a day.    On the 28th of Janu-
ary the plaintiff wrote the defendant inquiring his terms.
The answer was as follows:

"HOT SPRINGS, January 30, 1885.
"M. M. Cohn, Little Rock, Ark.:

"Dear Sir—Yours of the 28th received and contents noted.
In reply will say, in regard to the lot, I will sell you for $10,000,
$5000 cash and $5000 give your note with ten per cent. interest.
If that is satisfactory, send the deed and I will send you
properly acknowledged.    Respectfully yours,

"J. KEMPNER."

This letter was sent in the care of A. Kempner, the defend-
ant's uncle, and agent for the payment of taxes and collection
of rents, but who had no authority to contract for the sale of
the lot; so that it was not delivered to Cohn until February 2.
On February 5 Cohn told A. Kempner he would take the

property and requested him to inform the defendant. And in reply to the letter of January 30 he wrote, himself, as follows:

"LITTLE ROCK, ARK., February 7, 1885.
"J. Kempner, Hot Springs, Ark.:

"Dear Sir—I hand you herewith the deed for your property, which you and your wife will please sign and have duly acknowledged. In order that I may get possession as soon as possible, I would like for you to return the deed, as well as all the deeds, memoranda, agreements, contracts, etc., that you have in connection with this property, at your earliest convenience—say by Monday's mail, if you can. I am having the title looked up now, which, if found correct, I will comply with your terms contained in your letter of January 30, to-wit: $5000 in cash and my note for balance or other $5000. If you should prefer, I will give you Mr. A. Kempner's indorsement, the note to bear ten per cent. per annum. You can send the deed to Mr. A. Kempner if you want to, or to the Merchants National Bank, if you prefer. Though, if convenient, I would rather you would come up, because it is always easier to talk than to write. By the memoranda, agreements, etc., I mean your papers relating to the walls on each side, so as to know what to claim. Hoping you will give this your early attention, I am, yours truly, M. M. COHN."

This letter was put into one of the government letter boxes before Cohn had received any notice that the offer was withdrawn. The envelope is postmarked Little Rock, February 7, 9 p. m. It reached Kempner on the 9th of February. The defendant being informed by letter from A. Kempner that Cohn was making his arrangements to buy the property, wrote, on the 7th of February, to Cohn, that he had changed his mind and now declined to sell.

Evidence was given, over objection, that Cohn, immediately after receiving the letter of January 30, had set to work to procure an abstract of the title, paying therefor $11.50, and

had employed attorneys to examine the same at a cost of $50. Also that he had parted with valuable securities to raise the money for the cash payment, and that after Kempner's refusal to consummate the trade, he had tried unsuccessfully, for some two months, to reinvest the money, whereby he had lost $80 or $100 in interest. It was further proved, without objection, that Cohn, about the time he wrote accepting the offer, had made a contract with another person, for a lease of the lot. The property was variously estimated by different witnesses to be worth from $10,000 to $12,500.

The plaintiff requested no special directions to the jury.

The instructions given at the defendant's instance were as follows:

1. The court instructs the jury that before they will be authorized to find damages for plaintiff in any sum whatever, they must believe from a preponderance of the evidence that the contract between plaintiff and defendant for the sale of said lot was definite and complete and without condition.

2. That before the jury can say that the contract in this case was completed, they must find from the evidence that the offer made by Kempner was accepted by Cohn absolutely and without qualification, and unless the offer of Kempner was thus accepted you will find for the defendant.

3. If the jury finds from the evidence that the letter of Cohn to Kempner in regard to accepting the offer of said lot contained any qualification of Kempner's proposition whatever, or that said letter was not an absolute acceptance of said proposition, Kempner is not bound and you will find for defendant.

4. Nor would Kempner be bound by the unconditional and unqualified acceptance of his offer unless the acceptance was made within a reasonable time, and it is for the jury to say what is a reasonable time, taking into consideration the situa-

tion of the parties and their facilities for communication, and unless you find from the evidence that Kempner's offer was accepted unconditionally and within a reasonable time by Cohn, you will find for defendant, Kempner.

5. The court instructs the jury that Cohn cannot recover damages for being kept out of the interest of his money, unless he tried to secure investment and failed, even if there was an absolute contract for the sale of the land.

7. The court instructs the jury that the statements made by Cohn to A. Kempner, that he, Cohn, would take the property, cannot be considered as an acceptance of J. Kempner's proposition.

And the court denied the sixth prayer, which was :

" If the jury find from the evidence that Kempner rescinded his offer to sell the lot for $10 000, and mailed that revocation before Cohn mailed his acceptance of the offer, they will find for the defendant."

I. The most material inquiry is, whether the minds of the parties ever met, or mutually assented to the same thing. When parties are conducting a negotiation through the mail, a contract is completed the moment a letter accepting the offer is posted, provided it be done with due diligence, after receipt of the letter containing the proposal, and before any intimation is received that the offer is withdrawn. *2 Kent's Comm., 477; Adams v. Lindseil, 1 Barn. and Ald., 681; Dunlop v. Higgins, 1 H. L. Cas., 381; Abbott v. Shepard, 48 N. H., 14; Martin v. Frith, 6 Wend., 103; Stockham v. Stockham, 32 Md., 196.*

1. Contracts by mail: When completed.

II. Whether an offer remains open is a question of fact. Of course the proposer may limit the time for acceptance, as every man has the right to dictate the terms upon which he will sell his property. Where an answer by return mail is requested, or may be expected from the usage of trade, or nature

2. Same.

of the business, the making of the offer is accompanied by an implied stipulation that the answer shall be immediate. But unless the time is limited, the proposition is open until it is accepted or rejected, provided an answer is given in a reasonable time. *Wharton on Contracts, sec. 9; Mactier v. Frith, supra.; Dunlop v. Higgins, supra.; Hollock v. Insurance Co., 2 Dutcher, 268; Maclay v. Harvey, 90 Ill., 525; S. C. 32 Am. Rep., 35.*

*Averill v. Hedge, 12 Conn., 423,* is distinguishable from the case at bar in at least two particulars. There A., on the 16th of March, wrote offering to sell iron at a certain price, and the letter reached B., at Hartford, on the evening of the 18th; on the 19th, B. wrote a letter, accepting the offer, but it was not mailed until the 20th, and there being no mail on that day the letter did not get off until the 21st. And it was held the acceptance came too late. But the parties were dealing in a commodity that then was undergoing great fluctuations in value from day to day, and A. said in his letter: "We shall not consider ourselves holden to the offer made you unless you signify your acceptance thereof by return mail."

The defendant, having caused the question of reasonable time to be submitted to the jury, under an instruction drawn by his counsel, and having met with an adverse decision, now asks us to declare, as matter of law, that Cohn's acceptance was unreasonably delayed. But we think the question was properly resolved in favor of the plaintiff. The subject of negotiation was real estate, which requires more deliberation than if it had been a transaction in cotton or other article of merchandise. It is also less subject to sudden and violent fluctuations in price. Five days was not an unreasonable time within which to come to a determination, have the title looked into, and a conveyance prepared.

3. Withdrawal of offer.

Then as to the attempted retraction: An offer made by letter, which is to be answered in the same way, can not be

Kempner v. Cohn.

withdrawn unless the withdrawal reaches the party to whom it is addressed before he has accepted. An uncommunicated revocation is in law no revocation at all. *Benjamin on Sales*, sec. 44; *Taylor v. Merchants Fire Ins. Co.*, 9 *Howard*, 390; *Stevenson v. McLean*, 5 *Q. B. Div.*, 346; *S. C. 29 Moak's Eng. Rep.*, 341; *S. C. 20 Amer. Law Reg.*, 16; *Byrne v. Van Tienhoven*, 5 *C. P. Div.*, 344; *S. C. 30 Moak's Eng. Rep.*, 833.

When Kempner penned his withdrawal of the offer he did not know that it had been accepted at that time. But it was not necessary that he should know of it; and the acceptance was effectual to complete the contract, notwithstanding Kempner had previously mailed a letter to Cohn announcing the retraction of the offer. The case of *McCullough v. Eagle Ins. Co.*, 1 *Pick.*, 283, which holds a different doctrine, has been very generally rejected as authority.

The only error that we find in the record is the admission of the testimony tending to show that the plaintiff had lost interest on his $5000, which lay idle and unproductive for two months, and that he had made a lease before he was advised of the defendant's refusal to go forward with his contract. These are not proper elements of damages, for two reasons: First. They are too remote, not flowing naturally from the wrong complained of, nor presumably within the contemplation of the parties; and, second: · To allow them would be in effect to give double compensation for the same injury. In an action by a purchaser of land for breach of the contract to convey, the measure of damages is the difference between the contract price and the value of the land when the breach occurred, with interest on such difference. To this the cases usually add the expense of investigating the title, when any expense has been incurred. The vendee is entitled to have the thing bargained for, whether it be land or chattels, at the price agreed upon, and to resell it himself at its market price. And when he has received the profit, which it is shown he could have made on a resale, he

4. DAMAGES: For breach of contract to convey.

has been fully indemnified. *Hanna v. Harter*, 2 *Ark.*, 397; *Hopkins v. Lee*, 6 *Wheat.*, 109; *Engel v. Fitch*, L. R. 3 Q. B., affirmed in *Exchequer Chamber*, L. R. 4 Q. B., 659; *Purpelly v. Phelps*, 40 N. Y., 59; *Doherty v. Dolan*, 65 *Me.*, 87; *Kirkpatrick v. Downing*, 58 *Mo.*, 32; S. C. 17 Amer. Rep., 678; *Plummer v. Rigdon*, 78 *Ill.*, 222; S. C. 20 Amer. Rep., 261.

If the plaintiff shall, during the present term, enter a remittitur upon the usual terms, of $100, his judgment will be affirmed, otherwise he must submit to another trial.