J. H. RAYMOND, JR., v. A. H. YARRINGTON ET AL.

No. 1169.    Decided April 23, 1903.

**1.—Contract—Partners—Re-engaging in Business by One.**

A contract for the sale of an established business by two partners, the sellers undertaking that "we bind ourselves not to enter into or conduct" a similar business in certain designated territory, was violated when one only of the sellers re-entered such business within the prohibited limits; and this, though the two signed the contract in their individual names; and both were liable though only one took part in the violation.   (Pp. 447, 448.)

**2.—Actionable Wrong—Inducing the Breaking of a Contract.**

One who knowingly induces another to break his contract with a third person is liable to him for the damages caused by such breach of contract; and this rule is not confined to contracts for service, and includes all who combine or conspire to induce such breach.   (Pp. 448, 449.)

**3.—Damages—Accurate Proof.**

Damages for breach of a contract not to enter into a business within certain limits are not capable of being shown with accuracy, and it was error to instruct a verdict for defendant because the evidence did not show the definite amount of the damages, nominal damages being recoverable in any event.   (P. 452.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Raymond sued Yarrington and others, and appealed from a judgment for defendants.   On its affirmance he obtained writ of error.

*James W. McClendon* and *Fiset & Miller,* for plaintiff in error.—It has now become settled law that the wrongful or malicious procurement of the breach of a contract, where such breach results in damage, is an actionable wrong.   Such allegations are made in said petition.   Delz v. Winfree, 80 Texas, 400; Olive v. Van Patten, 7 Texas Civ. App., 630; Yoakum v. Dunn, 1 Texas Civ. App., 52; Railway v. Greenwood, 2 Texas Civ. App., 79; Doremus v. Hennessy, 43 Law. Rep. Ann., 797, and authorities cited; Lumley v. Guy, 2 E. & B., 216; Bowen v. Hall, 6 Q. B. D., 333; Ashby v. White, 1 Smith's Lead. Cas., 8 ed., 264; Jones v. Stanly, 76 N. C., 356; Hoskins v. Royster, 70 N. C., 601; Gore v. Condon, 39 Atl. Rep., 1044; Walker v. Cronin, 107 Mass., 567; Lumley v. Wagner, 13 Eng. Law and Eq. Rep., 252; Webster v. Dillon, 3 Jur. N. S., 432; Taunton C. M. Co. v. Cook, 24 Austin Law Rep., 547; Daly v. Smith, 49 How. Pr., 150; Moran v. Dumphy, 52 Law. Rep. Ann., 115; Anson on Cont., 2 ed., 276-278; note to Bowen v. Hall, 20 Am. Law Reg. (N. S.), 587, for authorities collated; 35 Albany Law Jour., 224; Lucke v. Assembly, 77 Md., 396; Chipley v. Atkinson, 23 Fla., 206; O. D. S. S. Co. v. McKenna, 30 Fed. Rep., 48, and 61 Fed. Rep., 45; C. S. & W. Co. v. Murray, 80 Fed Rep., 811.

Plaintiff, in an action for damages for injuries brought about by the tortious procurement of the breach of a contract, may join as defendants any or all of the tort feasors, as well as the party who has been induced

to wrongfully break his contract, and may recover damages from as many of them as he may show himself entitled to relief against. Delz v. Winfree, 80 Texas, 400; Olive v. Van Patten, 7 Texas Civ. App., 630; Lumley v. Guy, 2 E. & B., 216.

Upon the measure of damages in this case: 1 Sutherland on Dam., 2 ed., secs. 15, 16, 28, 44, 54, 59, 60, 62, 68, 69, 70; 1 Sedg. on Dam., sec. 182, pp. 264, 266; 2 Sedg. on Dam., 51, sec. 470; Schumaker v. St. Paul Railway, 12 Law. Rep. Ann., 257; Allison v. Chandler, 11 Mich., 542; Lawson v. Price, 45 Md., 123; Hawthorne v. Siegel, 88 Cal., 159; Goebel v. Hough, 26 Minn., 252; Terre Haute v. Hudnut, 112 Ind., 542; New Jersey Ex. Co. v. Nichols, 33 N. J. L., 434; Atkinson v. Morse, 63 Mich., 276; Simmons v. Brown, 5 R. I., 299; Schile v. Brookhahns, 80 N. Y., 614; Choctaw Railway v. Alexander, 7 Okla., 579; Central Coal and Coke Co. v. Hartman, 111 Fed. Rep., 96; 14 Enc. of Law, 802; 8 Enc. of Law, 2 ed., 618, 620, 625, 626, 627; 45 Cent. L. J., 254; 38 Atl. Rep., 96; Parrot v. Jacobson, 67 Pac. Rep., 589.

In written arguments filed in response to the request of the court, counsel for plaintiff in error cited and discussed the following authorities:

That both Yarrington and Harwood were liable if either re-engaged in the business: Love v. Stidham, 53 Law Rep. Ann., 397; Davis v. Willis, 47 Texas, 162; Crozier v. Kirker, 4 Texas, 257; Buzard v. Mosty, 77 Texas, 438; Boutelle v. Smith, 116 Mass., 111; Stark v. Noble, 24 Iowa, 71; Ludlow v. McCrea, 1 Wend., 228; Ernst v. Bartle, 1 Johns. Cases, 327; Peckham v. North Parish, 16 Pick., 283; Frost v. Williams, 50 N. W. Rep., 965; Davis v. Belford, 70 Mich., 120; Davis v. Barber, 51 Fed. Rep., 151; Kauffman v. Raeder, 108 Fed. Rep., 171; Darnell v. Lyons, 85 Texas, 455; Batsell v. Railway Co., 4 Texas Civ. App., 583; Pohlman v. Dawson, 54 Law. Rep. Ann., 913.

*D. W. & D. H. Doom* and *West & Cochran,* for defendants in error.— The petition was subject to a general demurrer because it fails to set forth clearly, specifically and distinctly the facts upon which plaintiff's cause of action is based.

The petition fails to state a cause of action as against the milling company, because it affirmatively appears therefrom that the only contractual relation existing between the milling company and plaintiff was one terminable at the will of either party. 1 Am. and Eng. Enc. of Law, 2 ed., 12-15, note 4; Story on Agency, secs. 462-467; Baker v. Insurance Co., 64 S. W. Rep., 913.

The gist of the action against the milling company is that it failed to employ plaintiff as a broker, and inasmuch as under the averments of the petition such employment was terminable at the will of the milling company, plaintiff was not in any event entitled to recover anything against said company.

The plaintiff's petition failed to disclose a cause of action so far as seeking to charge the milling company as a conspirator because the acts

complained of and chargeable to it were what it had a legal right to do, since having the right to terminate at will the relation existing between it and plaintiff and his brother, as a necessary result therefrom it had a right to employ Harwood or anyone else, and the recourse of plaintiff and his brother, if any, would be upon Harwood alone. Delz v. Winfree, 80 Texas, 400; Baker v. Insurance Co., 64 S. W. Rep., 913.

The allegations as to conspiracy are too general, and the acts upon which the damages are alleged are not the acts of all the parties, nor are they set forth specifically enough in detail so as to make any of the defendants as such liable therefor. Security Mortgage and Trust Co. v. Haney, 27 S. W. Rep., 217; 4 Am. and Eng. Enc. of Pl. and Prac., 737.

The petition by its averments discloses the following actions and parties thereto which can not be joined in one and the same suit, viz: 1. Damages against Harwood alone for a breach of a written contract; (a) for causing the defendant milling company to withdraw its business from Raymond & Bro. outside of Austin; (b) for causing the defendant milling company to withdraw its business from Raymond & Bro. inside of Austin. 2. Damages against Harwood and Yarrington for breach of a written contract, without claim, however, for exemplary damages against Yarrington. 3. (a) Damages against Harwood, McDowell, Kaufman and the milling company (but excluding Yarrington) for Harwood's acts done prior to February 1, 1899; (b) Damages against Harwood, McDowell, Kaufman and the milling company for acts of Harwood done since said date under the instigation and connivance of all the parties save Yarrington. 4. For an injunction against the milling company and Harwood alone, ignoring the other defendants, especially Yarrington. Stewart v. Gordon, 65 Texas, 347; Skipwith v. Hurt, 58 S. W. Rep., 192; De Gress v. Hubbard, 2 Posey U. C., 735; Cliett v. Cliett, 1 Posey U. C., 407.

GAINES, CHIEF JUSTICE.—The contract between the plaintiff in this case and Yarrington and Harwood contains this stipulation: "We specially agree and bind ourselves not to enter into or conduct a milling agency business in the city of Austin or the territory above designated without the written permission of J. H. Raymond, Jr., or his assigns," and we are inclined to think that the right of recovery under the allegations of the petition depends upon the construction of this part of the contract. Since the question of its construction was not discussed in the argument, we refer the case back to the counsel for both parties with the request that they furnish us with written arguments and citation of authorities upon the questions hereinafter propounded. The stipulation clearly provides that Yarrington and Harwood shall not jointly conduct the business of milling agents in the designated territory. But the questions are:

1. Does it bind them that neither shall conduct such business in such territory? and

2. If so, is Yarrington liable for Harwood's individual breach of the contract?

Delivered March 9, 1903.

GAINES, Chief Justice.—This suit was brought by plaintiff in error against defendants in error. General and special demurrers to the petition were interposed by all the defendants; and all were sustained, except those of defendant Harwood. His exceptions were overruled, but upon the trial, a verdict was instructed in his favor. A judgment was accordingly entered for all the defendants; and it was affirmed on appeal to the Court of Civil Appeals.

We will set out in substance and as briefly as practicable the facts alleged in the petition. In the first paragraph, Yarrington, Harwood, McDowell, Kaufman and the E. O. Stanard Milling Company, a corporation, are made defendants in the suit, and their respective residences are stated.

In the second paragraph it is alleged, that Yarrington and Harwood were partners engaged in a brokerage or agency business and had built up a profitable trade selling flour, meal, bran and other milling products for the defendant corporation and others engaged in a like business; that the firm had contracts with such corporations and others which gave them an exclusive right to sell the products of their employers in a certain designated territory, of which the city of Austin was a part; but that the contracts were for no definite period of time and were terminable at the pleasure of either party upon notice to the other. It was further alleged, that for the consideration of one thousand dollars the defendants Yarrington and Harwood sold to the plaintiff and to his brother one Frank Raymond, as partners, such agency business in such territory and bound themselves not to conduct at any time thereafter, either individually or as partners, a milling agency business therein; and that the defendant milling company knew of said contract and agreed that the plaintiff and his brother should take the place of Yarrington and Harwood as their agents in the designated territory and should there represent them exclusively in the sale of their products. It was also averred in such paragraph, that in the agreement it was stipulated in behalf of the defendant milling company that the plaintiff and his brother should retain defendant Yarrington to assist them in their business for the period of ninety days, and that thereby the defendant milling company impliedly agreed to retain the plaintiff and his brother as their agents in the designated territory for a reasonable time, provided they should prove to be satisfactory agents; and that but for the conduct of the defendants as thereinafter alleged the agency would have continued for a period of five years.

In the third paragraph it is further averred, that, in order to deprive the plaintiff and his brother of the advantages to accrue to them under their contract with Yarrington and Harwood, the defendants conspired to break up the agency business of plaintiff and his brother in the fol-

lowing manner: that to obtain the one thousand dollars paid for the business, Harwood entered into the contract with the intention of not carrying out his obligation and with the purpose of again entering upon the business of an agency for the sale of mill products in the territory named in the agreement; that "in pursuance of said conspiracy" he began in August, 1898, to sell the products of other mills in such territory, and that about December of that year the defendant milling company limited the territory of Raymond and brother, as their agents, to the city of Austin. That prior to February 1, 1899, defendants Mc-Dowell and Kaufman, acting in their own behalf and as agents of the defendant milling company, took part in the original illegal purpose of Harwood to violate said contract, and with full knowledge of the rights of the Raymonds, conspired and agreed with him that McDowell and Harwood should take the place of the Raymonds as the agents of the defendant milling company in the territory designated in the original contract between the Raymonds on the one part and Yarrington and Harwood on the other; and that thereupon the defendant milling company did employ McDowell and Harwood as their agents for such territory and did discontinue the employment of the Raymonds. It is also alleged in this paragraph, that about December 1, 1898, the defendant milling company limited the agency of the plaintiff and his brother to the city of Austin, and that they continued to act as agents for such restricted territory until February 1, 1899. Then follow allegations of a loss of profits from the conduct of defendants in the sum of ten thousand dollars and that their acts were done knowingly and over the protests of the Raymonds, with a claim for exemplary damages.

In the fourth paragraph are found similar allegations as to the destruction of the business of the plaintiff and his brother and the damages, which resulted therefrom, all of which are alleged to have accrued from a conspiracy on part of defendants McDowell, Kaufman, the milling company and Harwood to cause Harwood to break his contract with the Raymonds.

The fifth paragraph repeats the allegations as to the damages.

The sixth alleges an assignment for value by Frank Raymond of his interest in the cause of action to the plaintiff.

Were the demurrers of the defendants other than Harwood properly sustained? A copy of the written contract between the plaintiff and Yarrington and Harwood is made an exhibit to the amended petition and contains this provision: "We specially agree and bind ourselves not to enter into or conduct a milling agency business in the city of Austin or the territory above designated without the written permission of J. H. Raymond, Jr., or his assigns." It appears from the averments in the petition that Harwood only engaged in a milling agency business in the prohibited territory after the contract was executed; therefore, unless the contract properly construed bound each of them not to conduct such business, no cause of action is shown against either of the defendants. Do Yarrington and Harwood, by the contract, bind themselves

that neither of them shall sell mill products in the prohibited territory, or merely that both shall not? This question we referred back to the counsel for written arguments and the arguments have been filed. From the cases there cited we feel constrained to hold that it was a breach of the contract for either Yarrington or Harwood to again engage in the business in question in the designated territory. In the case of Welsh v. Morris, 81 Texas, 159, a partnership known as Welsh Brothers sold out a business as undertakers to the plaintiff Morris and bound themselves "not to start the undertaking business in Denison City, Texas, so long as said S. B. Morris is in the business." Subsequent to the execution of the contract one of the partners only engaged in the prohibited business, and it was contended that this was no breach of the stipulation. It was held, however, that the action of the one was a breach of the contract. The contract was signed "Welsh Brothers;" and counsel for defendants in error frankly concede that unless this case can be distinguished by the fact, that the contract of Yarrington and Harwood is signed by each of them in their individual names only, it is conclusive of the question against them. We do not think the cases can be distinguished. The contract of Yarrington and Harwood, though signed by them individually, is as much a contract as partners as if it had been signed in the partnership name. The decision in Welsh v. Morris is in accordance, as we think, with the weight of authority. See opinion of Alvey, Chief Justice, in Love v. Stidham, 53 Law. Rep. Ann., 397, and cases there cited. Contra: Streichen v. Fehleisen, 112 Iowa, 612.

The case then made by the petition is that the defendants, other than Harwood, conspired to induce and did induce the latter to break his contract to the damage of the plaintiff. The important question is, does this show a cause of action? The point has never been decided in this court, and the authorities upon it elsewhere are in conflict. We think, however, the great weight of authority is in favor of an affirmative answer to the question.

We will first review briefly the cases in the English courts in which the point has come up for consideration.

The first is the leading case of Lumley v. Gye, 2 El. & B., 216, which was decided in 1853. In that case the plaintiff, the lessee of a theater, sued the defendant, alleging that a certain singer had been engaged by the plaintiff to sing at his theater and none other, and that while she was under such contract the defendant maliciously induced and enticed her not to perform for him as she had agreed to do. Upon demurrer to the declaration it was held, by three of the judges, that it showed a good cause of action. Justice Coleridge, one of the four judges who sat in the case, dissented. Practically the same question came before the court in the case of Bowen v. Hall, L. R. 6 Q. B. Div., 333. It was again held that an action would lie for inducing one under a contract of service to another to leave the service. Lord Coleridge, then the Chief Justice of the Common Pleas, dissented from the opinion of the majority.

Again, in 1893, the case of Temperton v. Russell, 1 L. R. 1893, Q. B. Div., 715, came up for decision. There the plaintiff was a contractor and builder and had made contracts with third persons to supply him with material to be used in his business. The defendants were a committee of certain trades unions; and for the reason that plaintiff would not comply with certain rules laid down by the unions, they induced those who had contracted to deliver him material to break their contracts, and also conspired to prevent others from entering into contracts with him. It was held that they were liable both for inducing a breach of the existing contracts and also for conspiring to prevent others from entering into contracts with the plaintiff.

A similar case came before the House of Lords in 1897. Allen v. Flood, 1898, L. R. App. Cas., 1. In that case the plaintiffs were employed by the job at work upon a ship, but were subject to be discharged at the will of their employer. Allen, the defendant, representing a boilermakers' society, called upon the agents of their employer, and stated to them, that, unless the plaintiffs were discharged, the members of the boilermakers' society, about forty in number, then at work on the ship, would be "called out" or "knock off" work on that day. Thereupon their employer discharged the plaintiffs; and they brought suit against the defendant, alleging in effect that he had unlawfully and maliciously caused their discharge. It was held by the court—four of the nine law-lords dissenting—that, since the employer had a right to discharge the plaintiffs and since the discharge was lawful, the defendant was not liable for having procured it, although as found by the jury he acted from a malicious motive. In the numerous opinions which were given in the case, the previous cases of Lumley·v. Gye and Bowen v. Hall were discussed. After that decision it became a question, whether their authority had not been shaken, if not overturned thereby. But in 1901 the important case of Quinn v. Leathem (1901 App. Cas., 495) arose, and it was there held that "A combination of two or more, without justification or excuse, to injure a man in his trade by inducing his customers or servants to break their contracts with him or not to deal with him or continue in his employment is, if it results in damage to him, actionable." All the judges concurred in the judgment and the effect of the decision is to distinguish Allen v. Flood, and to hold the cases of Lumley v. Gye, Bowen v. Hall, and Temperton v. Russell were correctly decided.

In Lumley v. Gye the contract was one for personal services, and the insistence of Mr. Justice Coleridge was that it was not actionable to induce the breach of such a contract except where it created the relation of master and servant in the technical and restricted sense of those terms. The majority, however, held that the rule applied to any contract for service. The decision therefore goes no further than to hold that a cause of action lies for procuring the breach of any such contract. It may be doubted whether the contract the breach of which was

induced in Bowen v. Hall should be classed as a contract for service. However that may be, the contract in Temperton v. Russell was for the delivery of material, and it does not come under that class.

It seems to us, therefore, that the law is now settled in England that it is an actionable wrong knowingly to induce one to break his contract with another to the damage of the latter, and that it is also wrongful and actionable for two or more to accomplish such end by conspiring with each other.

Numerous decisions affirming the same rule may be found in the courts of this country. We will briefly refer to some of the more prominent cases.

In Angle v. Railway Co., 151 U. S., 1, the contract under consideration was for the construction of a railroad; and it was held that "If one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer." The opinion of Mr. Justice Brewer reviews Lumley v. Gye and other English cases which had been decided at that time, and was concurred in by all the judges save one, who dissented upon grounds not in conflict with the decision upon that point.

The case of Walker v. Cronin, 107 Mass., 555, holds that an action lies against one who procures the violation of his contract of service by the servant, and that the rule is not confined to contracts for menial service. It was argued by the dissenting judge in Lumley v. Gye, that the rule applied only in case of servants in the strict sense of that term, and that the action in such a case was given by a statute of 23 Edward 3, and was "limited by it." Since the Massachusetts court hold that the action is not confined to contracts such as are referred to in that statute, and since we see no sufficient reason for making a distinction in such a case between contracts of service and other contracts, it seems to us that that court would hold that it would be actionable knowingly to procure the violation of any contract to the damage of one of the contracting parties.

In Jones v. Stanly, 76 N. C., 355, it is distinctly held, that the rule applies to any contract.

On the other hand, it is decided by the Supreme Court of California that "maliciously inducing another to break a contract with a third person, will not create a liability to the latter, when it is done without threats, violence, falsehood, deception or benefit to the person inducing the breach." Boyson v. Thorn, 98 Cal., 578; 21 Law. Rep. Ann., 233. The same principle was applied in Bourlier v. Macauley, 91 Ky., 135, 11 Law. Rep. Ann., 550. That was a case strikingly like Lumley v. Gye. The plaintiffs had entered into a contract with the manager of the distinguished actress Mary Anderson to perform on certain nights at their theater, and afterwards the defendant procured a breach of the contract with plaintiffs and procured the actress to appear at his, a rival house. It was held that these facts constituted no cause of action.

There are many other cases of a somewhat similar nature, but in most of them there was some element of fraud, threats, intimidation or conspiracy, and for that reason they are probably not direct authority upon the question before us.

We are of opinion that the rule that, where one knowingly induces another to break his contract with a third person, such third person has a right of action against the one so causing the breach for any damages resulting to him by such breach, is supported by a decided preponderance of authority and by the better principle. The principle is well stated by Lord Justice Lopes in his opinion in the case of Temperton v. Russell, in the following extract: "The case which I think must govern our decision as to the first head of claim is Bowen v. Hall, which I understand to lay down the broad principle that a person who induces a party to a contract to break it, intending thereby to injure another person or to get a benefit for himself, commits an actionable wrong. That appears to me to be the effect of the decision in that case which was decided in 1881, and never appears to have been since questioned. I presume that the principle is this, viz., that the contract confers certain rights on the person with whom it is made, and not only binds the parties to it by the obligation entered into, but also imposes on all the world the duty of respecting that contractual obligation."

It seems to us that where a party has entered into a contract with another to do or not to do a particular act or acts, he has as clear a right to its performance as he has to his property either real or personal, and that knowingly to induce the other party to violate it is as distinct a wrong as it is to injure or destroy his property. It is not a sufficient answer to say that he has a remedy against the party who has broken the contract. In the first place such remedy is ineffectual unless he who has made the breach has property or credits which may be applied by process of law to the satisfaction of a judgment that may be obtained against him. In the second, it sometimes occurs, that, in case of joint tort feasors, the liability of the one may be secondary to that of the other, and that, in the event of a recovery against one, he may have a claim for indemnity against the party jointly liable. For example, a master may be sued for the wrong of his servant while acting in performance of the master's business and within the scope of his employment, although the wrongful act may have been done, not only without any participation on part of the master, but even against his express orders. We understand the rule in such a case to be that though either or both may be held liable to the injured party, as between the master and servant the latter is primarily responsible.

We have said that the point has never been decided in this court. But in Delz v. Winfrey, 80 Texas, 400, the plaintiff, a butcher, alleged in his petition that the defendants, a firm dealing in live stock, had not only refused to sell to him, but had combined with other such dealers and had induced them also to refuse to deal with him. It was held that the defendants had the absolute right to deal or not with the plaintiff

as they saw fit, but that it was an actionable wrong to induce others to do so. Clearly the substance of the wrong in that case was the inducement of third parties not to deal with plaintiff, which was a mere obstruction of his right to buy from dealers without officious interference on part of others. If it be actionable for one to intermeddle in another's affairs and thereby prevent him from making contracts, to the damage of his business, for a stronger reason it is actionable to induce the breach of a contract already made.

Our conclusion upon this branch of the case is that the court erred in sustaining the demurrer to the petition. Just here we will add, however, that it is not quite clear to us whether the allegations in the petition should be construed as charging defendant Yarrington as being a party to the agreement to induce Harwood to break his contract. But this is unimportant, since, as we have seen, he was responsible for Harwood's engaging again in the milling agency business, whether he induced him to do so or not.

We are also of the opinion that the court erred in instructing a verdict for the defendant Harwood. The charge is as follows: "In this case there is no evidence tending to show what part of the decrease in the business of Raymond & Bro. below that done by Harwood & Yarrington was caused by the competition of Harwood, if any, in violation of his contract, what part was due to competition of Harwood under his written permission, what part was due to other competition than houses represented by Harwood, or what part was due to lack of experience in the business on the part of Raymond & Bro., as compared with Harwood & Yarrington. * * * The jury will therefore return a verdict for the defendant." In view of the fact that the case will be remanded for a new trial, we must refrain from discussing the testimony. We may say, however, that the evidence does not show how much, if any, the plaintiff was damaged; and it may be that if, under the testimony and a proper instruction, the jury had given only nominal damages, the court should not have disturbed the verdict. From the nature of the case, it is impossible to show the damages with accuracy, and to require accuracy in such a case would be to deny a remedy for a wrong. In Welsh v. Morris, previously cited, a judgment for substantial damages was sustained upon testimony quite as unsatisfactory, to say the least of it, as that introduced in the present case.

If Harwood violated his contract the plaintiff was entitled to recover, at all events, nominal damages. Davis v. Railway Co., 91 Texas, 505.

The judgment of the District Court and that of the Court of Civil Appeals are reversed and the cause remanded for a new trial.

*Reversed and remanded.*