BOWEN v. SPEER et al. (No. 6529.)

(Court of Civil Appeals of Texas. Galveston. April 17, 1914.)

1. VENDOR AND PURCHASER (§ 16*)—OFFER AND ACCEPTANCE—ACCEPTANCE BY MAIL.

One receiving by mail a proposition of purchase or sale has the right, within a reasonable time, and before it is withdrawn, to accept by a writing, deposited in the post office, duly stamped for delivery, and such acceptance is binding from the time it is so deposited, whether delivered or not; but, if the offeror limits the time for acceptance, it may be accepted at any time within such limit, unless during that time, and before acceptance, the offer is withdrawn, and notice thereof given.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

2. VENDOR AND PURCHASER (§ 351*) — VENDOR'S BREACH OF CONTRACT—MEASURE OF DAMAGES.

The measure of damages for the vendor's breach of his offer to sell after its acceptance is the difference between the market value of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the property at the time of the breach and the price at which it was offered.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1017, 1047–1058; Dec. Dig. § 351.*]

3. VENDOR AND PURCHASER (§ 16*) — OFFER AND ACCEPTANCE—SUFFICIENCY OF ACCEPTANCE.

Where the owner of a lot offered to take $500 net cash, provided he could have the money in hand by May 28th, an unconditional acceptance by mail, by which the owner, by simply executing a deed waiting for him at a bank, could have the money in his hands by the 28th, was sufficient.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

4. VENDOR AND PURCHASER (§ 343*)—VENDOR'S BREACH OF CONTRACT—LIABILITY FOR DAMAGES.

A vendor who, after the acceptance of his offer to sell, sold the land to others, thereby placing it out of the purchaser's power to enforce specific performance, was liable to the purchaser for damages sustained by such a breach of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1023–1029; Dec. Dig. § 343.*]

5. TORTS (§ 12*)—INTERFERENCE WITH CONTRACTUAL RELATIONS.

One who knew of an offer to sell land, and of its acceptance, and of the condition that the money should be in the vendor's hands by May 28th, and who, for his bank, loaned the purchaser the money to pay for it, and who also knew that the purchase price would be paid within such time on the owner's tender of his deed, and who two days before such date induced the owner to sell the land to him, was liable to the purchaser for damages resulting from the breach of the contract of sale.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 13; Dec. Dig. § 12.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by R. E. Bowen against H. A. Speer and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

E. B. Pickett, Jr., of Liberty, for appellant. Marshall & Harrison, of Liberty, for appellees.

McMEANS, J. On May 22, 1909, H. A. Speer was the owner of lots Nos. 1 and 4 in block No. 6 in the town of Liberty. On that date W. L. Bingle, a real estate agent, acting for appellant, Bowen, wrote to Speer, who resided in the city of San Antonio, as follows: "I have another applicant for your 2 lots in the town of Liberty, authorizing me to pay $500.00 for the 2 lots. Please let me hear from you in regard to the sale of it."

Speer, on May 24, 1909, replied to Bingle by letter as follows: "Replying to your favor of 22d, will say that I will take $500.00 cash, net to me, clear of all taxes, abstract, or commission, for my 2 lots in Liberty, provided you can arrange it so I can get my hands on the money by the 28th of this month. Thanking you for the inquiry, and with best personal regards," etc.

Receipt of this letter containing Speer's proposal was communicated by Bingle to appellant, Bowen, who at once began to arrange for the raising of the needed $500 to pay for the lots. Appellant testified that on May 26, 1909, after banking hours he called upon appellee Zeiss, who was the president of a bank in Liberty, and who was at his office in the bank, and explained to him the necessity of at once obtaining a loan for $500, and told him that he was going to purchase with it the two lots of Mr. Speer. Zeiss told Bowen that the bank was then closed for business for the day and requested him to call the next day; but Bowen explained to him the necessity of his sending a check that evening, which was, as Bowen testified, on May 26th, so that Speer could get the money by the 28th. Zeiss then told Bowen, upon the latter agreeing to furnish certain collateral security, that he would lend him the money, and that he could send his check by that day's mail, and that he could execute the note the next day. Accordingly Bowen had a deed prepared to be signed by Speer conveying to himself the lots, and inclosed the same with this check for $500 on the Liberty bank, payable to Speer, addressed to the First National Bank of San Antonio, together with a letter to the latter bank directing it to deliver the check to Speer upon his signing and acknowledging the deed. This letter, the deed, and the check were inclosed in an envelope, properly stamped and addressed, and duly deposited in the mails in time for it to leave Liberty on the evening train. There was also sent in the same envelope a letter written by the cashier of the Liberty bank to the Frost bank directing the latter to pay Bowen's check therewith inclosed. At the time of the mailing the above letter there was also mailed a letter from Bingle to Speer, properly addressed and stamped, accepting for Bowen his offer, and requesting him to call at the Frost bank and sign and acknowledge the deed, and to receive the check inclosed with it. After Bowen had talked with Zeiss about buying the lots, Zeiss, who had been wanting the lots himself, taking advantage of the information acquired from Bowen, appears to have concluded to beat Bowen to it, so he took the first train out from Liberty to San Antonio, arriving early the next morning, which he testified was on the morning of May 26th. The evidence was sufficient, we think, to justify the conclusion that he really reached San Antonio on the morning of the 26th, although this is in direct conflict with the testimony of Bowen to the effect that he arranged with Zeiss to borrow the money on the afternoon of that date. However that may be, the testimony leaves no doubt that the letter of acceptance and the letter inclosing the check were mailed on the same day that Zeiss started for San Antonio, and before he concluded the purchase of the lots. It appears that Bowen's letter

accepting Speer's proposition, and inclosing the deed and check, did not reach Speer until the afternoon of the 27th. Zeiss arrived in San Antonio the day after he left Liberty and at once hunted up his friend Herman F. Schmitt, and procured him to purchase the lots from Speer for $500 net, taking the deed in his (Schmitt's) name, with the agreement and understanding that Schmitt would thereafter deed the lots to Zeiss. Zeiss paid the purchase price to Speer through Schmitt. A little less than a year later Schmitt conveyed the lots to Zeiss, and thereafter, before this suit was brought, Zeiss conveyed the lots to C. W. Fisher and H. C. Compton. Speer received the letter notifying him of Bowen's acceptance of his offer not later than the afternoon of May 27th, and soon thereafter directed the Frost bank to return the deed and check to him, which was done. On the morning of May 27th Bowen executed his note to the Liberty bank for $500 in accordance with the arrangement made with Zeiss, and was given credit by way of deposit in that bank for that sum, and had that sum to his credit at that time.

On May 25, 1911, Bowen brought this suit against Speer and Zeiss to recover damages for the breach of contract to sell to him the lots in question, setting up the facts and the further fact of the sale of the lots by Zeiss, thereby placing it beyond plaintiff's power to compel specific performance, and prayed for a judgment against both. Upon a trial before the court, without a jury, judgment was rendered in favor of defendants, and plaintiff has appealed.

We shall not consider appellant's assignments of error in detail, but think it sufficient to say that the points hereinafter discussed are sufficiently presented by them.

[1] It appears to be the law that, when a party submits to another through the mail a proposition of purchase or sale, the receiver of the proposition has the right, within a reasonable time, and before it is withdrawn, to accept by a writing deposited in the post office, duly stamped, ready for carriage and delivery, and such acceptance binds the proposer of the contract from the time the deposit is made in the post office, whether it be delivered or not. Mortgage Co. v. Davis, 96 Tex. 508, 74 S. W. 17, 97 Am. St. Rep. 932. But if the proposition so made gives a limit of time in which it may be accepted, then the person to whom it is made may accept the same at any time within the limit given, unless the proposer during said time, and before acceptance, withdraws the offer and notifies the other party thereof. Kempner v. Cohn, 47 Ark. 519, 1 S. W. 869, 58 Am. Rep. 775.

[2] Where an owner, after his offer has been accepted, or during the time in which the proposed purchaser is given to accept, sells to some other person, and in the latter case when the offer is accepted within the time limited, without notice of the withdrawal

166 S.W.—75

thereof by the owner, a liability for damages as for breach of contract arises, and the measure of damages is the difference between the market value of the property at the time of the breach and the price at which the owner had so offered to sell it. Kempner v. Cohn, supra; Kempner v. Heidenheimer, 65 Tex. 591; Nevins v. Thomas, 80 Tex. 597, 16 S. W. 332.

Where a person to whom such an offer of sale is made accepts the same within the time in which he is limited by the offer, another person knowingly inducing the person making the offer to break his contract thus made is liable for the damages caused by such breach of contract. Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914; Brown Hdw. Co. v. Ind. Stove Works, 96 Tex. 453, 73 S. W. 800; Lytle v. Railway, 100 Tex. 292, 99 S. W. 397, 10 L. R. A. (N. S.) 437; Davidson v. Oakes, 128 S. W. 944.

[3, 4] Keeping in mind the foregoing principles, we think that under the facts stated Bowen accepted Speer's offer at such a time and in such manner as to complete a contract between them for the sale of the lots, and that, when Speer sold to Zeiss, he thereby breached his contract and became liable to Bowen for such damages as the latter sustained thereby. Speer's proposal was definite, and the only condition imposed by him was that the purchase price should be in his hands by the 28th. Bowen's acceptance was unconditional, and the facts sufficiently show that he took every step necessary to put the money in Speer's hands by the time specified. In the ordinary course of business affairs the sending of a check is in itself sufficient. But when we recall the acts of Bowen in arranging for the money and depositing it in the bank to meet the payment of his check, and when it is remembered that the cashier of the Liberty bank wrote to the Frost bank to cash the same upon the execution of the deed by Speer, and when Speer, by simply executing the deed, could have the money in his hands by the 28th, we think that Bowen had sufficiently complied with the only condition imposed by Speer in his offer (Hoskins v. Dougherty, 29 Tex. Civ. App. 318, 69 S. W. 106), and, these facts having been shown, the contract of sale was binding on Speer, and, had he not sold the lots Bowen could have enforced specific performance thereof. Speer having sold the lots to Zeiss, and Zeiss having sold them to others, thus placing it out of the power of Bowen to enforce specific performance, his right to damages against Speer, if he sustained any, for a breach of the contract is, we think, certain. Kempner v. Cohn, 47 Ark. 519, 1 S. W. 869, 58 Am. Rep. 775.

[5] But under the facts stated is Zeiss also liable for damages to Bowen? We think so. Zeiss knew of Speer's offer to Bowen, of the latter's acceptance, and of the condition imposed by Speer that the money should be in

his hands by the 28th. He, for his bank, agreed to loan, and did loan, Bowen the money to pay for the lots. He knew that Bowen was mailing to the Frost bank his check, payable to Speer, in payment for the lots, and the cashier of the bank of which Zeiss was president wrote to the Frost bank to cash the same when it was properly presented by Speer; and Zeiss knew it would be paid whenever Speer so presented it. Having knowledge of the facts, he hurried to San Antonio, and, although he knew that Bowen had until the 28th to accept and pay the purchase price, he, on the 26th, induced Speer to sell to him, and thereby to revoke his offer to Bowen before the expiration of the time given Bowen within which to accept.

We think under these facts Zeiss became liable to Bowen under the rule stated in Raymond v. Yarrington, supra, and other cases cited in the same connection.

It is our opinion that the court erred in not rendering judgment against both Speer and Zeiss for the damages sustained by Bowen, and, for this error the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.