Harold E. WILLIAMS and Brenda WILLIAMS
*v.* Larry COTTEN

CA 84-216                                      684 S.W.2d 837

Court of Appeals of Arkansas
Division I
Opinion delivered February 27, 1985
[Rehearing denied March 27, 1985.]

*Smith, Smith & Duke,* for appellant.

*Phillip J. Taylor,* for appellee.

TOM GLAZE, Judge. This is the second time this case has been appealed to this Court as a result of a contract dated August 14, 1980, for the sale of real estate. *Williams* v. *Cotten,* 9 Ark. App. 304, 658 S.W.2d 421 (1983). On the first appeal, we remanded for a determination of whether appellee was entitled to damages as a result of appellants' breach of contract. The chancellor found that certain damages totalling $12,166.65 resulted from the appellants' breach. On this appeal and cross appeal, the appellants contend that (1) the trial judge used the wrong measure of damages and (2) appellee should be charged interest on the appellants' $20,000 that the appellee retained in his possession. On his cross appeal, the appellee/cross appellant contends that the chancellor erred (1) in making no finding with respect to the issue of liquidated damages or, in the alternative, (2) in not awarding appellee/cross appellant each element of damage that he claims to have suffered as a result of the breach.

The measure of damages for a vendee's breach of an executory contract for the sale of land is the difference between the contract price of the land and its market value at the time of the breach, less the portion of the purchase price already paid. *McGregor* v. *Echols,* 153 Ark. 128, 239 S.W. 736 (1922). According to the undisputed facts at bar, the contract price and the market value at the time of the breach were the

same — $120,000. Therefore, the appellee's damages based upon the Arkansas rule were zero.

Appellee has cited no Arkansas authority to support awarding all the damages he maintains he suffered because of the appellant's breach. In *McIlvenny* v. *Horton,* 227 Ark. 826, 302 S.W.2d 70 (1957), a case cited by both parties, the Supreme Court considered whether a provision in a contract for the sale of real estate was or was not a valid liquidated damages clause. The Court found that the provision represented a penalty, not liquidated damages, and denied recovery thereunder. However, the Court found that the appellee vendors had suffered actual damages of $460. The damages were expenditures the vendor had made preparatory to the sale to the breaching vendees and included the cost of an abstract, revenue stamps, a survey, an escrow fee, a real estate agent's fee, and an attorney's fee.

We agree with the appellants that the chancellor in the instant case erred in awarding consequential damages that were remote from the breach. In *McGregor* v. *Echols, supra,* the court set out the general rules for awarding damages when a vendee breaches (difference between the contract price of the property and its market value at the time of the breach, less the portion of the purchase price already paid), and when a vendor breaches (difference between the contract price of the property and its value when the breach occurred, with interest on the difference). The court said:

> "In actions against a vendee on a contract for the purchase of real estate, we had supposed it to be a well settled rule that when a party agreed to purchase real estate at a certain stipulated price, and subsequently refuses to perform his contract, the loss in the bargain constitutes the measure of damages, and that is the difference between the price fixed in the contract and the salable value of the land at the time the contract was to be executed."

*Id.* at 132 (quoting *Old Colony Railroad Corp.* v. *Evans,* 6 Gray 25, 56 Am. Dec. 394 (Mass. 1856)).

In an earlier case, *Kempner* v. *Cohn*, 47 Ark. 519, 1 S.W. 869 (1886), the Supreme Court reversed an award of damages that had been awarded a vendee against a vendor who had breached. Although the situation there was opposite the one in the instant case, the Court's reasoning is equally applicable here. In *Kempner,* the trial court had permitted the introduction of evidence showing appellee's loss of interest on money he had raised by selling interest-bearing securities in order to purchase appellant's land and evidence of a lease on the subject property that he had negotiated with a third party prior to appellant's breach. The Supreme Court denied the trial court's award of that portion of damages representing interest on the vendee's investment which "lay idle and unproductive for two months," and damages for loss of profits on the lease. The Court said:

> These are not proper elements of damages, for two reasons: First. They are too remote, not flowing naturally from the wrong complained of, nor presumably within the contemplation of the parties; and, second: To allow them would be in effect to give double compensation for the same injury. In an action by a purchaser of land for breach of the contract to convey, the measure of damages is the difference between the contract price and the value of the land when the breach occurred, with interest on such difference. To this the cases usually add the expense of investigating the title, when any expense has been incurred. The vendee is entitled to have the thing bargained for, whether it be land or chattels, at the price agreed upon, and to resell it himself at its market price. And when he has received the profit, which it is shown he could have made on a resale, he has been fully indemnified.

*Kempner* v. *Cohn,* at 527-28, 1 S.W. at 872.

The rationale underlying the foregoing rule is equally applicable to a vendor when a vendee breaches — the vendor is entitled to the thing he or she bargained for. The appellee in the instant case bargained to sell his house to appellants for $120,000. Because the appellants breached that agreement, the appellee is entitled to the difference between that

agreed-upon price and the market value at the time of the breach. There was no difference; therefore, appellee suffered no damage that the law will compensate.

This is not to say a vendor could never suffer damage flowing *directly* from a breach. For example, expenses for a title opinion or an abstract that appellee incurred in preparation for the sale to the appellants may have been compensable, but *not* expenses connected with the resale to third parties, as here the Thorntons, the people to whom the appellee subsequently sold the property for the sum of $120,000. *See, e.g., McIlvenny* v. *Horton* at 830-31, 302 S.W.2d at 72. Here, the trial judge awarded appellee over $10,000 damages for monthly payments he paid on the subject property from the time of appellants' breach until he resold the property to the Thorntons. For this same period, appellee also was awarded damages for property association dues and utilities incurred. Obviously, such damages are not directly connected with appellee/appellants' breached sale and are remote and speculative in that the ultimate or total amount for these items depends solely upon when the appellee consummated a resale.[1] Although support exists in a few other jurisdictions for awarding such damages, it is clearly not the law in Arkansas.

Appellants' second point — that appellee commingled appellants' $20,000 down payment with his own funds, applied them to his own use and is thus liable for interest on that amount — is *without merit.* In support of their argument, appellants quote from Rule 37(a) of the Rules of the Real Estate Commission that provides, in part, that "[a] broker shall not commingle his own personal funds or place in his own personal bank account moneys coming into his hands which belong to others such as escrows . . . clients' moneys, earnest moneys. . . ." Rule 37(a) alone, does not support appellants' entitlement to the interest they seek, and

---

[1] The Court also awarded appellee damages for a real estate commission he paid when reselling the property. However, because the appellee incurred no such commission when contracting to sell the property to appellants, the commission damages given appellee are not directly connected with the appellants' breach and should not have been allowed.

appellants cite no other authority. Rule 37(a), while setting out a proscription against a *broker's* commingling a *client's* funds, is not a remedy provision and clearly does not provide for an award of interest. The evidence presented below does not establish that appellee and appellants were in a broker-client relationship and nothing we said in our opinion in the first appeal of this case established that as a fact. Finally, appellee testified below that he did not hold an active real estate license at the time he negotiated with appellants for the sale of his house; that testimony was not disputed. Whether the appellee did or did not hold an active license would be a factor in determining whether the Real Estate Commission's rules and its sanctions applied to him at the time. Based upon these facts and appellants' failure to show authority to support their theory, we have no basis for awarding appellants·interest on their $20,000.

We find the appellee/cross appellant's two points for reversal on his cross appeal without merit but, in disposing of those, we note some discrepancies between the findings the chancellor made from the bench and those made a part of her decree which was drafted by the counsel for appellee. Appellee's first point is that the chancellor erred in the following, set out in the decree: "Court makes no finding as to the issue of liquidated damages plus the damages which occurred after the breach." However, at the end of the hearing, the following colloquy occurred.

> Mr. Taylor: Your Honor, could we ask you to make a ruling with reference to liquidated damages and findings with regard to that?
>
> The Court: Court is denying any other damages, any other connection damages other than so spelled out herein.
>
> Mr. Taylor: Is the Court making a finding that the $20,000 was not liquidated damages?
>
> The Court: Yes.

The chancellor clearly found the $20,000 was *not* liquidated

damages, a finding with which we concur, but the decree unfortunately does not reflect that finding. We think such a result — that the $20,000 is not liquidated damages — is in keeping with *McIlvenny* v. *Horton, supra,* in which the Supreme Court found that a clause providing for the forfeiture of 16% of the purchase price was out of proportion to the probable damages and was intended as a penalty by the parties. In our *de novo* review of this case, we find that a $20,000 forfeiture (17% of the purchase price) for the breach is out of proportion to the actual damages incurred and would constitute a penalty against appellants. In addition, we believe the testimony of the appellants and the appellee was that the parties intended the $20,000 to be a down payment, and possibly a penalty, but not to be liquidated damages.[2]

Appellee's second point on his cross appeal is that the chancellor erred in not awarding the appellee each element of damage he claims to have suffered by the appellants' breach. This argument is merely a rehash of what has already been covered. Suffice it to say, Arkansas law simply does not permit the remote consequential damages sought by the appellee.

We reverse that part of the decree awarding the appellee the following:

(1) nominal damages of $25.00 [from the bench, the chancellor declined to award nominal damages — but the award of $25.00 nominal damages was in the decree];

(2) consequential damages as follows:

(a) monthly house payments totalling $10,362.78;

(b) property association dues totalling $149.98;

(c) a real estate commission of $4,344 paid by appellee for the resale of the property;

---

[2]Actually, appellee testified in the first appeal as well as here that he believed and intended the $20,000 was consideration for an option agreement.

(d)  utilities totalling $457.65;

(e)  attorney's fee for abstract opinion of $60 (for the  the resale); and

(f)  abstract certification by Guaranty Abstract of $53 (for the resale).

Since the appellants are not being charged for house payments and property association dues, they are not entitled to credits awarded them for principal paid on the mortgage ($615.44), rent paid by the Thorntons ($2,250.00), an insurance refund ($387.00), and a refund on property association dues ($33.32). Appellants are entitled to their down payment of $20,000.

We remand for a decree to be entered in accordance with this opinion.

Affirmed in part, reversed and remanded in part. Appellee's cross appeal is dismissed.

CLONINGER and CORBIN, JJ., agree.