### SWIFT & CO. v. ALLEN et al.

(Court of Civil Appeals of Texas. Texarkana. Nov. 27, 1912. Rehearing Denied Dec. 12, 1912.)

TORTS (§ 10*)—INTERFERENCE WITH EMPLOYMENT OR OCCUPATION—RIGHT OF ACTION.

Plaintiff, an express messenger, in violation of the company's rule prohibiting employés from soliciting or handling commodities of any kind forwarded by express on their personal account, engaged in the egg business at a profit. The manager of defendant company, engaged in the same business, after urging plaintiff to agree to a price for eggs, and without knowledge of the express company's rule or malice toward plaintiff, informed the express company, and in consideration of the business it gave the company requested that plaintiff discontinue such

business, but in a talk with plaintiff said that he would not object to fair competition at a fixed place of business, and at no time interfered with plaintiff's customers. The express company, as a result of the letter, required plaintiff to discontinue his personal activity, but permitted him to be a silent partner in a firm in the same business, from which he had a profit, but finally discharged him. Plaintiff, as messenger, had access to papers enabling him to learn who defendant's customers were, so that he might become an unfair competitor. *Held*, that while every one has a right to the advantages of his industry and enterprise, and to be free from malicious or wanton interference, he cannot be protected against competition, and that plaintiff had no action for an interference with his occupation in the way of fair competition, as to which defendant's rights as to the express company were equal to those of the plaintiff.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 10; Dec. Dig. § 10.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by Jas. R. Allen and others for an injunction against Swift & Co. and the Pacific Express Company. Judgment for plaintiff against Swift & Co. and judgment for Pacific Express Company, and Swift & Co. appeals. Reversed, and judgment rendered for Swift & Co.

The suit was brought by the appellee jointly against Swift & Co. and the Pacific Express Company for damages claimed to have been occasioned to him by reason of an alleged wanton and malicious intermeddling and interference with his business, and causing his discharge as an employé of the express company. Appellee was in the employ of the express company as a messenger in December, 1908, and for about eight years prior thereto. His duties were to handle express on the train between Texarkana and Whitesboro, Tex. His employment by the express company as messenger was by the month only, at a fixed salary. While and during the time appellee was employed as messenger of the express company he established for himself and conducted in person a profitable business of buying and selling eggs and turkeys to supply the hotels, restaurants, and merchants of Texarkana. He handled from 2,000 to 4,000 dozen eggs a month. The eggs and turkeys were purchased by appellee from the merchants and dealers at the different stations along the route of his express service, and they would ship to him by express to Texarkana, paying the regular charges of the company. The express company had in force the following rule, known to appellee: "Employés whose services are engaged exclusively by this company are absolutely prohibited from soliciting or handling for their personal account commodities of any kind forwarded by express on commission or speculation." The agent at Texarkana and the route agent of the express company, it seems, knew that appellee was engaged in the business contrary to the rules, but never said anything to him in reference thereto. Swift & Co. was engaged in handling and supplying the trade in Texarkana with different kinds of meat and cold storage eggs and fowls, and was a patron of the express company. Stating it in the language of the appellee: "About December 1, 1908, Mullin, manager and solicitor of business for Swift & Co. at Texarkana, mentioned my business to me. He was just talking in regard to the egg business and about them being a little scarce along about then, getting near Christmas, and he asked me at what price I would sell him, and I told him 28 cents a dozen. He said that was not enough; that I ought to get 30 cents; and I told him the rest of them were selling at 28 cents and I could afford to sell for that. Well, he wanted me to raise the price to 30 cents to all except Bussey Bros., who were good patrons, and he would continue to furnish them at 28 cents. I told him as long as other parties were selling at 28 cents I could not make any agreement to go higher on it. I think that is all that occurred at that time until after Mr. Mullin had taken up the matter with the company, and requested them to have me discontinue." On December 21, 1908, the following letter was written and delivered to the express company: "T. N. Edgell, Supt. Pac. Exp. Co., Dallas, Tex.—Dear Sir: We respectfully call your attention to the fact that one of your employés, Mr. J. R. Allen, is shipping in eggs to this point and entering into competition with us. Inasmuch as we give you the preference on all business and consequently do considerable volume with you, we would ask that you cause the above-named party to discontinue his activity along this line that will come in competition with us. We are taking this matter up with you direct in preference to taking same up with our railroad department, as we feel satisfied that you will give the matter attention at once. Thanking you in advance for an early reply, we are, Yours respectfully, Swift & Company, per C. W. Mullin, Manager." The record admits the fact that Swift & Co. did nothing more than write this letter of complaint. The superintendent at once inclosed the letter to the appellee. The appellee, upon receiving this correspondence, went to the manager of Swift & Co., and told him of the correspondence, and asked him if he would not withdraw the complaint. According to the testimony of appellee, the manager "replied that he could not, as I was competing with them, and that he understood I was selling eggs at a price for a profit that they could not afford to handle eggs at, as I have no regular place of business here he could not afford to withdraw his complaint. He said if I would engage exclusively in the business and go in competition with them in the right kind of a way, and get me a house and compete with them openly, that he had no objection, but that he would not withdraw his complaint. This was somewhere between the 1st and 10th of January, 1909." The ap-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

pellee then wrote a letter to the superintendent, and in reply received the following letter: "This is to acknowledge receipt of your letter of January 10, and I am inclosing an excerpt from monthly circular No. 95, paragraph No. 8, page 648, also a copy of the recommendation of the Interstate Commerce Commission to the U. S. Senate. While the name of messengers are not used, this prohibits the agents from doing what you are doing, and there is no reason why the agents should be forbidden to do so, and not the messengers. I trust that you will see the wisdom of this, and discontinue the egg traffic or resign your position as messenger and go into the egg business exclusively. They do not go well together, and in many instances I have found that it results in a loss of business to the company, which I am here to prevent." Upon receipt of this letter appellee then wrote the superintendent, asking him if he had any objections to his continuing the business, provided he ceased to be actively engaged in the business. The superintendent then wrote the route agent as follows: "There is no objection whatever in having Mr. Allen interested in the commission firm, but he must not be an active partner while in the employ of this company." This reply was shown to appellee, and he then engaged thereafter in the same business with C. W. Williamson, under the name of C. W. Williamson & Co., and he ceased to be an active partner in carrying on that business while he was a messenger. The business was thus carried on till January, 1910. Appellee was discharged from the service of the express company about the 4th or 5th of January, 1910. It appears that appellee made from $40 to $60 a month out of the business before he went into partnership with Williamson. After the partnership, it appears from the record that appellee cleared $40 only. Appellee claims the loss from partnership to have been because he could not actively himself handle and solicit the business. By his petition appellee predicates liability for the loss upon the following grounds: (1) That the Pacific Express Company and Swift & Co. did "maliciously and wickedly conspire together for the express purpose of preventing the plaintiff from buying and selling to his said customers eggs and poultry, and in consequence of such malicious and wicked conspiracy between the said defendants plaintiff was prevented from engaging in said business and the same was ruined"; (2) "that Swift & Co. for the purpose of stifling competition, and in conspiracy against trade, did maliciously demand of the Pacific Express Company that said company cause the plaintiff to cease his business as a dealer and shipper and supplier of the trade as aforesaid, and did demand that said company discharge plaintiff from its service if he continued to engage in the legitimate business aforesaid, and that the said Pacific Express Company, at the instigation and un-

lawful interference on the part of Swift & Co., did demand of plaintiff that he either discontinue his business or it would discharge him from its service;" and (3) "that the said defendant, Swift & Co., maliciously induced the defendant Pacific Express Company by threats of withdrawing its patronage from it to break off this plaintiff's business and to finally discharge the plaintiff from its service, to the end that it might, contrary to the laws of the state of Texas, have a monopoly of the egg business in Texas and be able to fix and control the price thereof to its, Swift & Co.'s, great benefit." The trial was to a jury, and the jury returned a verdict in favor of the plaintiff against Swift & Co. The court gave a peremptory instruction in favor of the express company.

Glass, Estes, King & Burford, of Texarkana, for appellant. Smelser & Vaughan, of Texarkana, for appellees.

LEVY, J. (after stating the facts as above). By the first assignment of error the appellant, Swift & Co., predicates error upon the refusal of the court to peremptorily instruct a verdict in its favor. A verdict was directed in favor of the express company and the court in his charge excluded any claim for damages against Swift & Co. other than for the alleged ruin of appellee's egg and poultry business. In the absence of any complaint, as here, of the court's ruling applicable to such peremptory instructions, and there being a jury finding and judgment thereon, we must assume acquiescence in such rulings and the conclusiveness of the same as to this appeal. Any question as to liability at all of the express company, and any question of liability of Swift & Co. for alleged wrongfully procuring or causing the appellee's discharge from service as a messenger, would therefore be entirely eliminated from the appeal. Consequently the question remaining here is as to whether or not the court should have also directed a verdict in favor of Swift & Co. under the alleged complaint that it had effected and caused the ruin of appellee's egg and poultry business by wanton and malicious interference with it. There is no dispute in the facts, and it is not asserted by the parties that there is any conflict of evidence, unless it be that bearing on the question of damages.

The material facts appearing from the evidence, so far as essential to be stated for the purposes of the question under review, are that appellee Allen, while under employment as a messenger of the Pacific Express Company, was personally engaged in buying up turkeys and eggs from dealers along his route, and having them shipped to him by express to Texarkana, and there selling them to customers. Swift & Co. were also engaged in the poultry and egg business in Texarkana, and were patrons of the express company. On December 21, 1908, the manager

for Swift & Co. at Texarkana wrote a letter to the superintendent of the express company calling attention to the fact that Allen, its messenger, was shipping in eggs to Texarkana, and entering into competition with it, and to the further fact that it was a patron of the express company, and asked that the express company "cause the above-named party to discontinue his activity along this line that will come in competition with us." The express company referred the letter to Allen, with the result that Allen was required by the express company, in order to continue in its employ as messenger, to discontinue personally handling or actively carrying on the commission business while performing the duties of a messenger. But the express company consented that he might continue interested in the business as a silent partner of a firm, which was done thereafter under the name of Williamson & Co. The express company had a rule, known to appellee, but it does not appear Swift & Co. knew it, which reads: "Employés whose services are engaged exclusively by this company are absolutely prohibited from soliciting or handling for their personal account commodities of any kind forwarded by express on commission or speculation." Swift & Co. did not do or say anything more to the express company, as the record admits, in reference to appellee's business, or the appellee himself, than to write the letter of December 21, 1908. Prior to writing the letter the manager for Swift & Co. had a conversation with Allen to the effect of insisting that appellee should sell eggs at 30 cents, instead of 28 cents, per dozen. After the letter of December 21st was referred to Allen, he called on the manager of Swift & Co. to withdraw the complaint in the letter, and the manager replied to the effect that he would not withdraw the complaint to the express company, unless appellee would agree to engage exclusively in the egg and poultry business. It is upon this letter of December 21st to the express company, coupled with the two conversations of Mullin with him, that appellee relies to sustain a cause of action for wanton and malicious interference with his commission business. It may be said from the first conversation of Mullin with appellee, happening prior to the letter to the express company, that it appears clearly enough that the object or motive on Mullin's part was to have appellee agree to raise the selling price of eggs to what Mullin claimed was the only price he could afford to sell them at. But the purpose to injure appellee in his business as such is not evident from either the first or second conversation. In the second conversation it is clear that the only purpose Mullin had was to have appellee either follow the service of messenger, or go exclusively into the commission business. It can be assumed, as proven, that the letter written by Mullin to the express company caused the express company to enforce its rule heretofore mentioned against Allen, and that by its enforcement Allen lost an advantage to him in his business of solely conducting it without partnership, along with his messenger service, that he would have been able to attain or enjoy but for the letter of complaint, unless sooner terminated by the express company by enforcement of its rule on its own motion. As it is not shown nor contended in the case that either the express company or Swift & Co. induced any of the customers or parties selling to appellee to break their contracts with him, or not to deal with him, neither the case nor the principle applied in the case of Raymond v. Yarrington, 96 Tex. 443, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914, would rule the question here. See 2 Page on Contracts, p. 2046; Angle v. Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55. And, as there is no pretense in the facts that there were direct acts of interference or molestation in the conduct of appellee's business, as in the case of Dunshee v. Standard Oil Co. 152 Iowa, 618, 132 N. W. 371, 36 L. R. A. (N. S.) 263, cited by appellee and relied on by him, the principle there applied could not have force and application to the facts here. It is a significant fact here that the existence of the appellee's asserted right to continue unmolested in his dual capacity as messenger of a public service corporation and commission merchant was not a matter of contract with the express company. On the contrary, it was a violation of the promulgated and known rule of the express company. The defeat of the right, if so, to continue the business and the agency together for benefit to appellee, could not therefore be related to any contract right with the express company and Allen so to do, so far as the pursuit of the commission business was concerned. It is the aim of the law to protect every person against the wrongful act of every other person, and the law has provided an action for injuries done by disturbing a person in the enjoyment of any right or privilege he has. The principle has thus been laid down in Walker v. Cronin, 107 Mass. 555: "Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition or the exercise of rights by others, it is damnum absque injuria unless some superior right by contract or otherwise is interfered with. But, if it comes from the merely wanton or malicious acts of others without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing." See, also, 2 Cooley on Torts, p. 598; 1 Cyc. 650. Following this principle, in order

to constitute the letter of December 21st an actionable wrong, there must be a violation of some definite legal right of the appellee. Allen, as a messenger in a public service corporation, was in a position to examine all the waybills, and to learn who the customers of Swift & Co. were and the amount of express it was doing in Texarkana; and being in the same business himself, and armed with this information obtained or obtainable by virtue of his employment as messenger, he could become an unfair competitor. The policy requiring public service corporations to treat all patrons alike and accord equal advantages to all shippers without discrimination would not sanction, we think, the idea that the express company properly could authorize or permit its employés to obtain such information and trade advantages for their own personal benefit by virtue of their employment as would enable them to use such information to their personal advantage as against patrons of the express company in the same line of business. In this view, then, appellee's right to use his employment in the public service corporation in connection with or as a means to assist him in carrying on his business to his advantage was not a right so superior to the appellant's right to complain and protest as to such methods as to be free from molestation by the appellant or the express company itself. If the appellant in the facts had the right in the interest of its business, as it did, to complain to the public service corporation that its employé was using his employment as he was to further his private business in competition with appellant, then such letter of complaint written by appellant to the express company would bring the act of appellant in making such complaint under the shelter of the principle of trade competition, and would not be a ground for action. Appellant in writing the letter of complaint was serving, it must be said from the facts, a purpose connected with its own business and founded on that purpose; and, being a complaint moving from a disposition only to protect its business, it could not be said that the act of appellant was done wantonly and without interest or occasion to do same. The letter contained presentation of reasons, not in themselves unlawful, why he should not continue as messenger and still be in a competitive business with a patron of the express company. The force of the letter, as seen, reached only to the purpose to have the express company "cause the above-named party to discontinue his activity along this line that will come in competition with us." As under the facts the object sought, and also the means used by appellant in complaining to the express company, was no broader than justified, the appellant was entitled to a verdict in its favor. The assign-ment therefore should be sustained, and the judgment here rendered which should have been rendered below, that the appellee have and recover nothing of Swift & Co., and that appellant recover all costs of appeal and of the court below.

The judgment not appealed from will remain undisturbed.