Opinion delivered October 30, 1939.

*P. L. Smith,* for appellant.

*L. W. Melburg, Byron Goodson* and *Rose, Lough-borough, Dobyns & House,* for appellee.

GRIFFIN SMITH, C. J. Appellant, alleging breach of contract, seeks to recover from appellee insurance company, with interest, all premiums paid during the life of the policy in question, amounting to $945.23.

In 1929 or 1930 Illinois Bankers Life Assurance Company reinsured the business of Illinois Bankers Life Association. Prior to that time the older organization

had operated as an assessment company. Appellant became a member of the association. Appellee is a legal reserve insurance company with "level" premiums sufficient to create and maintain a legal reserve.

When reorganization or reinsurance was effectuated, appellant applied for a legal reserve policy. His proportion of assets of the association was then $72.78. Of this amount $24.26 was applied as a premium on the new policy. The balance of $48.52 was transferred to an account designated "survivorship fund." Under the agreement by which this fund was created, to which appellant assented, assets were to be held in trust for distribution (conditionally) April 5, 1940, the recipients to be policyholders who had acquiesced in the plan, there being approximately 15,000 of such. The trial court's finding with respect to the survivorship fund certificate is shown in the margin.[1]

The new policy issued to appellant provided for quarterly premium payments of $12.48 on the fifth of January, April, July, and October, with 31 days of grace.

The January (1938) premium was due Wednesday, the fifth. Allowing for grace, it could have been paid as late as Saturday, February fifth. On February fifth appellant issued his check on the Bank of Delight and mailed it to appellee. It was received February 7. Due to the circumstance of its having been mailed within the grace period, appellee waived the default of two days during which time the check was in transit, and upon receiving the remittance issued and forwarded to appellant a provisional receipt, the terms of which were: "Any check, bank draft, or money order given in exchange for this receipt will be considered payment of the premium for which this receipt is issued, provided such check, bank

---

[1] ". . . A similar provision with reference to the so-called survivorship fund is contained in the survivorship fund certificate, and it appears that plaintiff agreed to such form of distribution of this fund in his application for exchange of policies. While the testimony discloses that the amount of surplus allotted to his policy at the time of default in the payment of his quarterly premium was more than sufficient to pay the premium, such amount did not become due plaintiff until April 5, 1940. and then only that he then be living and all premiums having been duly paid. Since the dividends were deferred and none could be apportioned to the policy until the end of the distribution period, they were not available for payment of the current premium, and defendant did not breach its contract in failing to apply such dividends."

draft, or money order is actually paid to the company on presentation in due course of business.''

Appellant's check, having been deposited for collection, reached the Bank of Delight ''on or about'' February 16. There being insufficient funds to the credit of Hare's account, payment was refused and the check was returned with the notation, ''No funds.''

The following day (February 17) appellant was informed by the bank's cashier of what had occurred. A letter was promptly sent to appellee in which appellant requested that he be supplied with blank forms for use in applying for a loan. In the same letter a cashier's check was inclosed for use in redeeming the dishonored personal check. Appellant's letter was received by the insurance company February 19.

February 26th the company acknowledged receipt of the cashier's check and accompanying letter. The unpaid personal check was returned. In its letter of explanation appellee called appellant's attention to the terms printed on the conditional receipt, stating that the policy had lapsed for non-payment of the January premium. However, the cashier's check was temporarily retained at the company's home office, the information having been volunteered that the amount ($12.48) was sufficient to pay a premium to April 5, 1938, provided appellant applied for and was granted reinstatement under the policy's provisions. The statement was made that the cashier's check would be held pending application if such should be made; otherwise it would be returned.

In appellant's brief it is stated: ''The testimony does not disclose what action was taken with reference to the application for reinstatement, but the cashier's check was later returned to plaintiff.'' In view of this statement we must assume that appellant did not establish insurability.

The policy contains three non-forfeiture provisions. Option rests with the insured, in the event of failure to pay premiums, to select one of the three: but, ''If the insured shall not surrender this policy for its cash value, as provided above in the first option, or for a policy of paid-up insurance, as provided in the second option, the

amount of insurance will be automatically continued in force as extended term insurance as provided in the third option.''

As of January 5, 1938, loan value of the policy was $397, against which there was an indebtedness of $367.14. The difference was $29.86. When the insured failed to exercise option one, or option two, it was the company's duty to recognize option number three—the non-forfeiture provision contracted for by the insured. This was done, in consequence of which appellant's policy was paid to May 9, 1939. In other words, the conceded loan value (net) of $29.86 was used as a single premium in paying the insurance for one year, four months, and four days.

Appellant's principal complaint is that before the dishonored premium check reached the insurance company's home office on its return trip, the company had in its hands a cashier's check tendered in payment of the worthless check. It must be conceded that there is some equity in appellant's contention. It is equally true, however, that competent, mature people have a right to contract with respect to permissive subjects; and if in such contracts reasonable forfeitures are provided for in instances of default, the courts, while frowning generally upon forfeitures, are powerless to protect a person *sui juris* from the consequences of his own inadvertence or from the fruits of his misfortune in those instances where the opposing party has a right to enforce the contract.

In the instant case default occurred when appellant's check was presented to the Bank of Delight, and payment refused. This occurred eleven days after the grace period had expired; and yet, we are asked to hold that because appellant, on the twelfth day of delinquency, sent the equivalent of cash with which to redeem the default, appellee must be coerced into accepting the tender. Such is not the law. Nor did appellee, by its act in temporarily retaining the cashier's check, waive the default. Couch on Insurance, § 688, says: ''Acceptance and retention of premiums during negotiations for reinstatement, and while awaiting for a reasonable time the

furnishing by insured of a health certificate do not waive a forfeiture based upon delinquency in payment." This rule was quoted with approval in *Illinois Bankers Life Assurance Company* v. *Petray,* 195 Ark. 144, 110 S. W. 2d 1070.

Appellant relies upon *National Life Insurance Company* v. *Brennecke,* 195 Ark. 1088, 115 S. W. 2d 855. In that case, however, the appellant insurance company neglected to do what the court said it should have done: that is, inform the insured that the check was accepted conditionally. In the case at bar the insured was so informed.[2]

The judgment must be affirmed. It is so ordered.

---

[2] "The company could have advised the insured that the check was accepted conditionally, that is, for collection only; but it did not do so. If it had advised the insured that the check was being accepted in payment only on the condition of its being honored when presented for payment, then, of course, the premium could not have been regarded as paid. On the contrary, as stated, it issued its regular receipt, advising the insured that the premium had been paid within the time prescribed by the policy."