478

WEBB *v.* THE MANHATTAN LIFE INSURANCE COMPANY.

4-9783                                    248 S. W. 2d 385

Opinion delivered May 5, 1952.

*John Baxter* and *DuVal L. Purkins,* for appellant.

*Coleman, Gantt & Ramsay* and *D. Theodore Kelly,* for appellee.

HOLT, J.   September 24, 1925, appellee, The Manhattan Life Insurance Company, a Mutual Company, issued to Clarence E. Webb, a life insurance policy in the amount of $15,000 (No. 218557), with double indemnity and disability clauses. Mr. Webb died June 6, 1950. Appellant, his wife, was his beneficiary in the policy. On January 14, 1925, the same company had issued to Webb another life insurance policy in the amount of $10,000 (No. 215800), which carried no double indemnity or disability clauses. Mrs. Webb was also beneficiary in this policy. Manhattan paid to appellant the proceeds due on this latter policy, but denied liability for the full amount of the $15,000 policy, on the ground that it had lapsed for nonpayment of the annual premium of $436.50, due and payable at its New York office September 24, 1946, or within the allowed 31 day grace period thereafter.

The present suit was filed by appellant to recover $10,935 ($15,000 less the Company's loan of $4,065) alleged due, together with penalty and attorney's fee.

Trial was had before the Court, sitting as a jury, and at the close of all the evidence, the Court found the issues in favor of appellee. There was no request for conclusions of law and none were given by the Court.

From the judgment is this appeal.

The policy contained (among others) these provisions: "This policy is issued in consideration of the payment, in advance, of the annual premium of $436.50, and of the payment of a like amount upon each 24th day of September thereafter during the continuance of this policy until the death of the insured."

There was provision for a grace period of 31 days. "Reinstatement—'Upon evidence of insurability satisfactory to the Company, this policy, if it has not been surrendered for its cash value, or if the terms for which the insurance was continued has not expired, may be reinstated at any time within 5 years after default in premium upon payment of arrears of premiums etc.' . . . Non-Forfeiture—'After this policy shall have been in force two full years, the Insured, within three months after default in the payment of any premium, may elect—(A) To surrender this policy for its cash value upon proper release signed by the Insured. . . . (B) To surrender this policy for nonparticipating paid-up life insurance, without disability or double indemnity benefits, payable at the same time and on the same conditions as this policy. . . . (C) To have the insurance continued in force from date of default, as nonparticipating paid-up term insurance without the right to loans and without disability or double indemnity benefits. The amount of paid-up term insurance shall be equal to the face of the policy plus any outstanding dividend additions and less any indebtedness to the Company under this policy. The term for which such paid-up term insurance will be continued shall be such as the net cash value under (A) will purchase as a net single premium

at the attained age of the Insured, according to the American Experience Mortality Table, and interest at three and one-half per cent per annum.'

"If the Insured shall not, within three months after date of default in the payment of any premium, elect one of the foregoing three options, as provided in (A), (B), or (C), the insurance will be continued as provided in Option (C)."

Briefly, the facts were: Appellee, as indicated, paid the $10,000 policy. The annual premium of $436.50 on the $15,000 policy was due and payable to appellee in New York September 24, 1946. Mrs. Webb mailed an uncertified check dated October 21, 1946, drawn on the account of C. E. Webb in the McGehee Bank for $680.50 (amount of the premium and interest on loan on the policy) to appellee. This check was received by appellee in New York on October 24, 1946, (one day before the grace period expired) and deposited by appellee on the same day. A premium receipt was immediately mailed to Mr. Webb, containing the following provision: "This receipt to be valid must be countersigned by a duly authorized representative of the company. If any check, draft or other obligation received on account of above payment is not paid in due course upon presentation, this receipt shall be void."

October 29, 1946, the McGehee Bank received this check, but returned it in due course because of insufficient funds to cover it. Thereafter (a few days after the expiration of the grace period) Mr. Webb attempted to make the check good, but appellee refused to waive the forfeiture, but offered reinstatement of the policy "upon evidence of insurability satisfactory to the Company" which the policy provided. Mr. Webb then made application for reinstatement, but failing to pass the physical test required was turned down by the Company. Thereafter, after the expiration of the ninety day period provided in the policy, and Mr. Webb having failed to make an election under the three options provided in sections (A), (B), and (C), above, the Company proceeding under section (C) above computed the net cash

value of the policy, as of September 24, 1946,—to be $540.00, and issued to Mr. Webb extended term insurance for $10,935 ($15,000 less loan of $4,065) for a period of two years and 327 days, running from September 24, 1946, to August 17, 1949. There was no provision in the policy that notice be given by the Company to the insured, Mr. Webb, before issuing to him the extended insurance under option (C).

Under what appears to be the undisputed facts, we hold that the trial court correctly held that the policy lapsed for the failure to pay the premium due September 24, 1946, or within the 31 day grace period. When appellee received the premium check at its New York office on October 24, 1946, (one day before the grace period expired) it deposited the check and forwarded to Webb a conditional receipt. As indicated, this receipt provided that ''if any check, draft or other obligation received on account of above payment is not paid in due course upon presentation, this receipt shall be void.'' Thus, the receipt, issued by appellee, shows on its face that it was issued on the specific condition that it be paid when presented to the bank on which drawn and was not accepted unconditionally by Manhattan in payment of the premium.

On facts similar, in effect, we held in *Hare* v. *Illinois Bankers Life Assurance Company*, 199 Ark. 27, 132 S. W. 2d 824, (Headnote 3) : ''Where the insured sent a worthless check in payment of quarterly premium, and the company accepted such check and sent a conditional receipt informing the insured that the acknowledgment was void unless the check should be paid on presentation, *held* that the company was not bound to accept a cashier's check in substitution of the dishonored check, the cashier's check having been received at the home office approximately two weeks after the period of grace had expired.''

The case of *National Life Company* v. *Brennecke*, 195 Ark. 1088, 115 S. W. 2d 855, relied upon by appellant, is clearly distinguishable, for there the receipt given for the premium check was unconditional.

Appellant, however, earnestly contends "Manhattan Life had in its custody cash values and sums of money, the property of Clarence E. Webb, more than sufficient to pay itself the sum of $436.00 within the time allowed for the payment of the premium of said policy."

The undisputed testimony appears to be to the contrary. Mr. Schubert, assistant secretary of the appellee company, testified positively that the insured directed in his application that dividends be credited to premiums, which was done and "there were no funds in the hands of the Manhattan Life Insurance Company under Policy No. 215800 ($10,000 policy) or Policy No. 218557 ($15,000 policy) at the time of the default in the payment of the premium on Policy No. 218557, that were available for use by the company to prevent a forfeiture of the policy." He further testified that no subsequent premiums were paid by Webb after the policy lapsed in 1946 and "that the cash value of Policy No. 218557 as of September 24, 1946, was $4,605 less an outstanding loan of $4,065, leaving a net value of $540. This sum was then used as a single premium to provide paid-up term insurance for $10,935 which ran for two years and 327 days. The amount of the insurance, namely $10,935, represents the face value of the contract, $15,000 less the loan of $4,065."

Appellant earnestly insists on the rule announced in *Metropolitan Life Insurance Company* v. *Stewart,* 188 Ark. 903, 68 S. W. 2d 1017: "The burden was upon appellant to show that the divisible surplus in its hands was insufficient to pay the monthly premiums to keep the policy alive during the lifetime of the insured. It not only failed to do this and to notify the insured of the amount thereof, but, when asked on the trial of the cause to reveal the amount, it failed to do so."

The answer is that appellee, on the facts presented here has met the rule imposing this burden.

It also appears from records introduced by appellee that dividends were declared on the $10,000 policy in each year from the date of its issuance in 1924 through 1946.

The Company's records show, however, that no dividends were declared on the $15,000 policy for any year subsequent to 1933. It is insisted by the appellant that since the two policies were just alike, except the double indemnity and disability clauses in the $15,000 policy, it was incumbent on the appellee to show why no dividends were credited to the larger policy after 1933. Schubert testified that no such dividends were declared, and doubtless the explanation lies in the fact that the $15,000 policy carried disability benefits, while the $10,000 one did not. A New York statute of 1931 permits an insurer to differentiate, in the payment of dividends, between those of its policies that have disability benefits and those that do not.

As the New York Court of Appeals held, in *Rhine* v. *New York Life Ins. Co.*, 6 N. E. 2d 74 (Headnote 4): "Action of mutual life insurer, in distributing smaller dividends on life policies containing disability benefit provision than on life policies lacking such provision because extra premium charged for disability benefits was insufficient to meet cost of furnishing such benefits, *held* not abuse of discretion and did not constitute unlawful discrimination against life policies containing disability benefits (Insurance Law, §§ 83, 89)."

Since this appellee is a New York company, it is fairly inferrible that the above statute explains why there were no dividends available on the policy now in question.

The judgment is affirmed.