# ROGER OLSEN v. PREFERRED RISK MUTUAL INSURANCE COMPANY.

170 N. W. (2d) 581.

September 12, 1969—No. 41509.

*Douglass, Bell & Donlin* and *Duane R. Harves, James L. Schultz,* and *Thomas J. Lyons,* for appellant.

*Karlins, Grossman, Karlins, Siegel & Brill, Sheldon D. Karlins,* and *Robert L. Lowe,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

In this action plaintiff-appellant, Roger Olsen, sought a declaratory judgment that a policy of automobile liability insurance issued by defendant-respondent, Preferred Risk Mutual Insurance Company, was in force and effect on July 16, 1966, when plaintiff was involved in an accident; that plaintiff was entitled to coverage and protection pursuant to the terms of the policy; and that he was entitled to recover his attorney's fees incurred in bringing the action.

The facts as found by the trial court, sitting without a jury, are as follows: Plaintiff had been insured for some time under a policy of insurance issued by defendant, which policy by its terms expired June 30, 1966. In June 1966 defendant mailed a bill for renewal of this policy to plaintiff. Upon receipt of this

bill, plaintiff called defendant's branch office in Minneapolis and obtained information regarding an adjusted rate because he had recently been married. He was informed that he could send a statement about his marriage and the premium payment to the branch office in Minneapolis, which would be forwarded to defendant's home office in Des Moines, Iowa. On July 5, 1966, plaintiff mailed the statement concerning his changed marital status and his check for the adjusted premium to the branch office. The court found that, although the check was deposited in the mail and was properly addressed, it was never received and was lost in the mail.

On the day he mailed the check plaintiff had sufficient funds in the bank to pay it. He continued to have sufficient funds until July 13, 1966, but on July 14 and thereafter he did not have enough in his account to pay the check until long after July 15.

On July 16, 1966, plaintiff was involved in an accident in which he and his wife were injured and their automobile was completely destroyed. The car was subject to a mortgage held by the First National Bank of Minneapolis, and the insurance policy had a loss-payable clause providing that losses under coverage known as "d comprehensive" and "upset" were payable as interest might appear to the bank.

On July 11 defendant had notified the bank that the loss-payable clause was canceled as of 10 days from the date of the notice. Following the accident defendant denied coverage under the policy and refused to pay the bank. In the next 4 months plaintiff was required by the bank to make payments totaling $360 on his note. Thereafter defendant paid the bank the amount of the unpaid balance of the mortgage, less the $360 plaintiff had paid.

Plaintiff received no communications or notices from defendant after he had mailed the check until after the accident, when defendant denied coverage. Plaintiff's offer to pay the premium, made in the fall of 1966, was refused.

The trial court concluded that defendant was indebted to plain-

tiff in the sum of $360 (the payments made on the note), plus $200 for attorney's fees incurred in bringing this action, and for plaintiff's costs and disbursements. It concluded also that the policy was not in force on the date of the accident except for the loss-payable clause in favor of the mortgagee bank.

Plaintiff appealed from the judgment entered pursuant to the foregoing findings of fact and conclusions of law. Defendant also sought review of the judgment in so far as it awarded plaintiff relief and failed to award defendant the amount it paid to the bank on plaintiff's behalf.

■ Defendant takes the position that the remittance of a check for an insurance premium drawn on a bank in which the drawer fails to keep sufficient funds to cover payment of the check for a reasonable period of time for the payee to present it for payment does not constitute payment of the premium and thereby prevent lapse of the policy for nonpayment of the premium.

The legal issue underlying this proposition is whether the remittance of a check in payment of a debt (in this case, an insurance premium) is anything more than a conditional payment, contingent upon the check being paid upon presentment by the payee. As stated, the trial court found that plaintiff did not keep sufficient funds in the bank after July 13, 1966, to keep the check good. While plaintiff contends that "whether or not the plaintiff, appellant here, had sufficient funds in his checking account to cover the $82.35 check which he sent to the Preferred Risk Mutual Insurance Company" appears to be a moot question. We agree with defendant that this question is the precise question that is determinative of the case.

It has long been the law in this state that acceptance of a check for payment of an obligation is a conditional payment and not a final payment until the check is presented and honored. This rule was recently repeated in Wayzata Enterprises, Inc. v. Herman, 268 Minn. 117, 128 N. W. (2d) 156. That case involved a contract for purchase of certain real estate for $70,000, of

which $5,000 was paid in cash and the balance was to be paid in monthly installments. Approximately a year later defendants were in default on the contract, and plaintiff served notice of cancellation pursuant to Minn. St. 559.21. Within the 30-day redemption period allowed by statute, defendants issued and delivered their check for the amount of the default, plus the installment then due. Prior to presentment for payment, defendants stopped payment and plaintiff thereupon brought suit on the check. The trial court held that plaintiff had served proper notice of cancellation of the contract and that, inasmuch as the check was not paid, the cancellation was effective and plaintiff could not thereafter recover the payments due on the contract. In affirming, we set forth the following rules (268 Minn. 117, 128 N. W. [2d] 157):

"Delivery of a check is not payment unless the parties expressly agree that it shall be so.

"When it is claimed that a check was accepted as payment, the burden rests upon the one asserting that to be a fact to prove it.

"The presumption is that a check is a conditional payment only and until the check is paid the debt remains. Upon payment of the check, the debt is deemed to have been discharged when the check was given.

"The drawer of a check has the power of revocation until the check is presented for payment.

"A check is not an assignment of the funds in the bank but only an order authorizing the bank to make payment upon presentation.

"Where payment of a check is stopped before it is presented for payment, it is generally held that the relation between the drawer and payee becomes the same as if the check had been dishonored."[1]

---

[1] See, 11 Am. Jur. (2d) Bills and Notes, § 590; Patterson v. Oakes, 191 Iowa 78, 181 N. W. 787, 14 A. L. R. 559, Annotation at 562; Usher v. A. S. Tucker Co. 217 Mass. 441, 105 N. E. 360, L. R. A. 1916F, 826.

See, Isackson v. Lovell, 115 Minn. 481, 132 N. W. 918; Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 287 N. W. 15; McFadden v. Follrath, 114 Minn. 85, 130 N. W. 542, 37 L. R. A. (N.S.) 201; 14 Dunnell, Dig. (3 ed.) § 7445.

Clearly, if the check in the case at bar had been presented and dishonored for lack of funds, there could be no question but that the premium was not paid and the cancellation of the insurance policy would have been effective. In The Laura Baker School v. Pflaum, 225 Minn. 181, 183, 30 N. W. (2d) 290, 291, we said:

"A check is not money. It is an unconditional written order on a bank. The delivery of a check is not a delivery of money, but the delivery of an order. * * *

* * * * *

"Payment of a check may be stopped by notifying the drawee bank before it is presented for payment."

The Uniform Commercial Code, effective in Minnesota July 1, 1966, 5 days prior to the drawing of the check in question, supports the trial court's conclusions of law. Minn. St. 336.3-802 provides in part:

"(1)  Unless otherwise agreed where an instrument is taken for an underlying obligation

* * * * *

"(b) * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment."

Professor Kinyon, in Minnesota Code Comment, 21B M. S. A. p. 593, states:

"* * * This suspension of the obligation on the underlying debt is consistent with existing Minnesota case law since checks have always been treated as conditional payments which do not discharge underlying obligations until paid or discharged."

█ Plaintiff suggests an implied agreement by defendant to accept the check as absolute payment on the date of mailing. No

evidence of any arrangement between the parties exists from which an agreement to accept the check as absolute payment can be implied. Plaintiff states in his brief that at trial "there was no evidence adduced on behalf of the defendant to show what their normal procedures were." The burden of proving an agreement of any kind that the check was to be considered absolute payment when mailed is on the party asserting this to be the fact. Wayzata Enterprises, Inc. v. Herman, *supra*. In the absence of such proof, the presumption that the check was a conditional payment must prevail.

■ Plaintiff has cited several authorities in support of his contention that when the premium payment is placed in the United States mails, payment is deemed to have been received and the risk of the check being lost in the mail is on the one who has chosen the mode of payment. Plaintiff argues that it is a fundamental and well-established rule that courts will indulge in no presumption favorable to a forfeiture of insurance. Had the check been properly supported by sufficient funds in the bank, much could be said for the contentions of plaintiff, because the risk of loss during transmission was upon defendant. The risk that the check would not be honored was not.

The record discloses that over 2 weeks prior to being notified by defendant that his policy had lapsed, plaintiff was in doubt about the coverage. The trial court found that after mailing the check plaintiff received no notices that the premium was not paid. It would seem that his doubt could be based only on his knowledge that he had not mailed the check or, if mailed, that the check was not good. After being notified about August 12, 1966, that his policy had lapsed, plaintiff contacted an attorney, upon whose advice he mailed a check to defendant in October for the amount of the premium due June 30, 1966. These facts do not support plaintiff's contentions that either defendant had acted in bad faith or that the parties intended the depositing of the check in the mail to be absolute payment of the premium.

Plaintiff in failing to recognize the distinction between risk

of delivery and risk of payment on a check has cited only cases deciding the question of risk of delivery. For example, in Currier v. Continental Life Ins. Co. 53 N. H. 538, there was no question that the payment would be good if received because the remittance was in cash. Another case cited by plaintiff as a leading authority on the risk of nondelivery is Kenyon v. Knights Templar & M. Mutual Aid Assn. 122 N. Y. 247, 25 N. E. 299. There the insured mailed a check for his premium, as he had done in the past. The check was lost in the mails and never was received by the insurer. The court held that the insurer, having acquiesced in the use of the mails for payment by check in the past, had accepted the risk of nondelivery of the check. However, in so holding, the New York court took the exact position of the trial court in the instant case, stating (122 N. Y. 262, 25 N. E. 303):

"If the check had been mailed addressed to the secretary by the direction of the defendant, the member would not have been in default, although it was not received, *assuming, as we may, that he had the funds in the bank to meet it.*" (Italics supplied.)

■ We cannot make such an assumption here. The trial court's determination that plaintiff did not keep sufficient funds in the bank to cover the check for a reasonable period of time is supported by substantial evidence and certainly is not manifestly contrary to the evidence. We have repeatedly said that the findings of the trial court are entitled to the same weight as those of a jury and will not be reversed unless manifestly and palpably contrary to the evidence.

The specific finding on this question was that on July 14 and for a long time thereafter plaintiff did not have sufficient funds in the bank to cover the check. Minn. St. 336.3-503(2) provides in part:

"A reasonable time for presentment is determined by the nature of the instrument, any usage of banking or trade and the facts of the particular case. In the case of an uncertified check

which is drawn and payable within the United States and which is not a draft drawn by a bank the following are presumed to be reasonable periods within which to present for payment or to initiate bank collection:

"(a) With respect to the liability of the drawer, 30 days after date or issue whichever is later; * * *." [2]

In 14 Appleman, Insurance Law and Practice, § 8144, the rule regarding payment by check is stated as follows:

"The mere giving or sending of a worthless check to the insurer does not effect the payment of a premium; the result being * * * if given for a subsequent premium, that the coverage is not thereby prevented from lapsing."

See, also, 6 Couch, Insurance (2d) § 31:44.

In Hare v. Illinois Bankers Life Assur. Co. 199 Ark. 27, 132 S. W. (2d) 824, the insured, after remitting a premium check, was notified by his bank that the check had been dishonored. He promptly sent a bank draft for the amount. The bank draft was received after the period for payment had expired, but prior to the return of the dishonored check, and the court there held that even this did not preclude the insurer from claiming a forfeiture of the policy for nonpayment. In Webb v. Manhattan Life Ins. Co. 220 Ark. 478, 248 S. W. (2d) 385, the court explicitly held that an insurer is not bound to permit an insured to make a check good after the grace period has expired.

Since plaintiff's mailing of the check in the instant case was not absolute payment of the premium but only conditional payment, the trial court correctly concluded that the policy had lapsed for nonpayment of premium and was not in effect on July 16, 1966.

---

[2] By prescribing a specific period for presentment in order to charge drawers, the foregoing provision materially changes the "one business day" presumption frequently referred to in the cases. See, Russell v. Buxton, 181 Minn. 104, 231 N. W. 789; Uniform Commercial Code Comment, 21B M. S. A. p. 494.

■ The trial court held that plaintiff could recover $200 attorney's fees and $360 for the amount paid plaintiff's mortgagee. The general rule is that one successfully maintaining an action on an insurance policy cannot recover attorney's fees unless the policy so provides or there is statutory authority therefor. 6 Couch, Insurance (2d) § 58:113.

In the recent case of Abbey v. Farmers Ins. Exch. 281 Minn. 113, 160 N. W. (2d) 709, this court held that attorney's fees were not recoverable in an action against an insurer to recover benefits under a disability policy. In that case, following denial of coverage by the insurer, the insured brought a successful action to recover benefits payable under the policy and the lower court allowed recovery of his attorney's fees in prosecuting the action. The trial court's decision was based upon Morrison v. Swenson, 274 Minn. 127, 142 N. W. (2d) 640, in which an exception to the general rule was adopted whereby a party thrust into litigation with a third party by the insurer's wrongful breach of contract in refusing to defend could recover attorney's fees incurred. We said in the Abbey case (281 Minn. 118, 160 N. W. [2d] 712):

"It is clear that the court below adopted the rule stated in the Morrison case. However, this court limited the rule established in that case to the situation presented therein and made it clear that it recognized the general rule that ordinarily attorneys' fees are not recoverable unless there is statutory authority for it. * * *

"The question here is whether an insured who prevails in an action to recover disability benefits is also entitled to recover attorneys' fees incurred in that action. Since the exception adopted in Morrison v. Swenson, *supra,* is in fact limited to damages resulting from breach of contract by the insurer's failure to defend, it does not apply and this case must be governed by the general rule."

We reach the conclusion that the circumstances here are similar to those presented in the Abbey case. There is no provi-

sion in the policy allowing recovery of attorney's fees. Plaintiff was not involved in any litigation with third parties. Therefore, the case at bar is clearly governed by the rule set forth in the Abbey case. Accordingly, plaintiff is not entitled to recover attorney's fees.

That part of the judgment appealed from dealing with insurance coverage is affirmed; that part of the judgment awarding attorney's fees is reversed.