Calvin A. MERRIMAN, Appellant,

v.

Winston E. SANDEEN, et al.,
Respondents.

Nos. 47730, 47754.

Supreme Court of Minnesota.

March 31, 1978.

Rehearing Denied May 1, 1978.

Gray, Plant, Mooty, Mooty & Bennett and Michael R. Cunningham, Minneapolis, for appellant.

Eckberg, Lammers, Briggs & Wolff, and Lyle J. Eckberg, Stillwater, for respondents.

Heard before TODD, YETKA and IRVINE, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This is an appeal by plaintiff from an order denying motions for amended findings of fact, conclusions of law, and order for judgment or a new trial. The district court sitting without a jury determined that plaintiff's tender of a check which was dishonored by the drawee bank caused the lapse of the option to purchase defendants' land. Plaintiff originally sued for specific performance. With the consent of defendants, a claim for compensatory damages was added. At trial plaintiff dropped his claim for specific performance. Because the trial court found that the option had lapsed, it made no determination of damages. We affirm.

On June 1, 1971, defendants entered an option agreement concerning 282 acres of land which they owned in Washington County. The contract was with Property Underwriters, Inc., a corporation owned by plaintiff. Property Underwriters assigned its interest to the Pine Springs Limited

Partnership. Macro, Inc., of which plaintiff is the president, was the general partner of Pine Springs Limited Partnership, and defendant Winston Sandeen was one of the limited partners. In 1972 the agreement was amended and in 1974, when the partnership dissolved, the interest in the option was purportedly assigned to plaintiff.

The contract [1] granted the option holder the right to purchase defendants' land for $797,500. In order to maintain the right to purchase, the option holder was required to make periodic payments which would be applied to the ultimate purchase price. The payments consisted of a $5,000 payment June 1, 1971, a $30,000 payment on August 1, 1971, and a $10,000 each year thereafter on August 1, until 1975. These payments were to be accompanied by notice of intent to renew. The payments could, according to the contract, be made by check. The original contract dated June 1, 1971, also contained the following clause:

"Buyer shall perform the conditions and comply with the terms of this option, *all within the times above specified and a failure to give such notice and comply with the terms and perform the conditions hereof* (except as hereinafter provided) *within the times specified, shall terminate this option, and all rights thereunder, without further act or notice whatsoever, time being of the essence of this agreement.*" [2] (Italics supplied.)

The 1972 amendment also provided that the option could be extended for an additional 5 years. The 5-year extension would have required a payment of $100,000 on August 1, 1976, in addition to continued annual payments of $10,000.

Between 1971 and July 1975, the option was renewed on a yearly basis; a total of $65,000 was paid to defendants. The payments were each made by check from plaintiff or his predecessors in interest. Each check was deposited in a bank where Mr. Sandeen maintained a personal account.

---

1. "Contract" includes the 1971 rider and 1972 amendment.

2. This clause was clearly reaffirmed by the amendment.

In 1974 plaintiff requested an extension of the August 1, 1974 payment date because of inability to raise the funds. Mr. Sandeen testified that he insisted the check be timely tendered. On July 22, 1975, when a waiver or renegotiation was requested, Mr. Sandeen informed plaintiff and his attorney that he insisted on timely payment of the 1975 $10,000 installment.[3]

On July 31, 1975, plaintiff deposited $9,900 in his checking account in the Summit State Bank of Bloomington. The deposit consisted of checks which were collected from former members of the Pine Springs Limited Partnership. The deposit slips for July 31, and Aug. 1, 1975, were marked "hold for 3 days." On August 1, 1975, an additional $12,000 was deposited, bringing the stated account balance to over $22,000. On July 31, 1975, Mr. Sandeen received from plaintiff a certified letter and an uncertified personal check for $10,000 drawn on Summit State Bank in Bloomington, Minnesota. Plaintiff spoke to Mr. Sandeen that afternoon and Sandeen acknowledged receipt of the check.

On Friday, August 1, 1975, Mr. Sandeen took the check to Summit State Bank in Bloomington and presented it for payment. The bank refused payment. Although the check was marked "insufficient funds," the account showed a balance greater than $10,000 on August 1, 1975. Apparently Mr. Sandeen was told both that the check was drawn on "insufficient funds" and that it was drawn on "uncollected funds."

A bank officer from Summit State Bank testified that the check would have been honored had it been deposited in Mr. Sandeen's Stillwater bank and taken several days to process. He also testified that by that time the funds represented by the checks on deposit would have been collected. He was clear that, although the check *could* have been paid, the bank *would not*

honor it until the funds represented by the checks on deposit had been collected.

Mr. Sandeen testified that he felt a sense of relief when the option lapsed. Sandeen returned the check to his attorney for return to plaintiff by registered mail. Plaintiff received the check on August 4, 1975 and went to Summit State Bank for an explanation. He then procured a certified check for $10,000 which was delivered to defendants' attorney on August 5, 1975. The check was refused and returned to plaintiff. Defendants have refused all subsequent retenders of $10,000.

The issue on appeal is: Was the tender by plaintiff of a $10,000 check adequate to extend the option agreement where the check was dishonored on presentment to the drawee bank?[4]

Plaintiff argues in the alternative that his tender of the $10,000 check was adequate to extend the contract; that equitable principles excuse any untimeliness; and that the trial court's decision was unconscionable and inequitable. Defendants argue that the dishonor of the check rendered plaintiff's performance inadequate and by its terms the option contract lapsed.

■ 1. *Standard of review.* Although plaintiff's initial brief implies that this court should apply the "clearly erroneous" standard to the trial court's findings of fact, his reply brief abandons that line of argument and urges that this court review what are essentially conclusions of law. The trial court's findings of fact would support the conclusion that plaintiff's tender of performance failed and the option lapsed. The trial court did not, however, state this as a conclusion of law, but expressed it explicitly in the memorandum accompanying its findings of fact, conclusions of law, and order for judgment.[5] There is no serious argument to be made regarding the

---

3. Apparently Sandeen also believed that the assignment of the option to Merriman was ineffective or was not made in good faith.

4. Plaintiff sets forth three issues in his brief; they are all restatements of the main issue.

5. Although the trial court's memorandum may not be used to impeach specific findings where it has not been incorporated, it may be used to explain the trial court's decision. *Viking Auto. Sprinkler Co. v. Viking Fire Protect. Co.*, 280 Minn. 250, 159 N.W.2d 250 (1968).

findings actually made by the trial court. They are amply supported by the evidence as plaintiff indirectly recognizes. The court found, at least by implication, that there was no intent of the parties to vary the literal terms of the contract. It also expressly found that no course of dealing or other agreement required defendant to deposit checks in his own bank.

█ Insofar as the trial court's determinations are based upon documentary evidence, this court may review them de novo, but to the extent that they depend upon resolution of testimonial conflicts, the "clearly erroneous" standard applies. *In re Trust Known as Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976). Under either standard, the trial court's decision was correct. Although we could characterize our review as one of mixed findings of fact and legal conclusions, there is authority for the proposition that performance by an option holder is a question of fact. *Ferch v. Hiller*, 209 Minn. 124, 295 N.W. 504 (1941). We hold that the trial court's findings were not clearly erroneous and that its conclusions of law were adequately supported by its findings.

2. *Dishonor of plaintiff's check by drawee bank.* Plaintiff argues that the literal language of the contract only required written notice and tender of a check to extend the option for 1 year. Apparently plaintiff's position implies that the check need not be backed by funds and that it was to be taken as absolute, not conditional payment. Plaintiff further argues that he was not required by the agreement to tender a check which was immediately convertible into cash. Defendant argues that the agreement merely removed plaintiff's obligation to tender cash but that the check was nonetheless only conditional payment.

The general rules regarding payment by check were set forth in *Wayzata Enterprises, Inc. v. Herman*, 268 Minn. 117, 120, 128 N.W.2d 156, 158 (1964), in part as follows:

"\* \* \* Delivery of a check is not payment unless the parties expressly agree that it shall be so.

"\* \* \* When it is claimed that a check was accepted as payment, the burden rests on the one asserting that to be a fact to prove it.

"\* \* \* The presumption is that a check is a conditional payment only and until the check is paid the debt remains. Upon payment of the check, the debt is deemed to have been discharged when the check was given."

*Wayzata Enterprises, Inc.* upheld the cancellation of a contract for deed where the vendee stopped payment on a check tendered as a contract installment.

In *Olsen v. Preferred Risk Mutual Ins. Co.*, 284 Minn. 498, 170 N.W.2d 581 (1969), *Wayzata Enterprises, Inc.*, was reaffirmed. Olsen stated that dishonor of a check used to pay an insurance premium would cause the policy to lapse. This court noted that the then newly enacted Uniform Commercial Code was consistent with prior Minnesota case law and upheld the trial court's ruling that the policy lapsed because the plaintiff failed to have sufficient funds in his account for a reasonable period of time, notwithstanding the fact that the check was apparently lost in the mail. This court added:

"Clearly, if the check in the case at bar had been presented and dishonored for lack of funds, there could be no question but that the premium was not paid and the cancellation of the insurance policy would have been effective." 284 Minn. 503, 170 N.W.2d 585.

Minn.St. 336.3–802 provides in part:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

"(a) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

"(b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation;

discharge of the underlying obligor on the instrument also discharges him on the obligation."

The statute clearly distinguishes bank paper (e. g., certified checks) from checks of the kind involved in the present case. The statute also makes it clear that the parties may contractually vary its effect.[6]

Minn.St. 336.3–802 states that a personal check is conditional payment which in the present case served to extend the option provisionally until presentment. Upon dishonor of the check, payment failed. If the check had been processed through banking channels and had been dishonored, its dishonor several days later would certainly have constituted failure of payment relating back to the day of tender.

The only way that plaintiff could prevail on this issue would be for this court to find that the contract made tender of the check itself absolute payment and that plaintiff should have been left to his action on the instrument. There is nothing in the contract which would support that interpretation. Plaintiff presented no evidence which would support that interpretation. The evidence that plaintiff requested a waiver of the renewal date because he was low on funds implies that he believed delivery of a check was not in and of itself a renewal. Under the principles of *Wayzata Enterprises, Inc.* plaintiff has not carried his burden of proof.

■ There is no question that the bank dishonored the check when it was duly presented. Presentment is defined by Minn.St. 336.3–504(1) as—

" * * * a demand for acceptance or *payment* made upon the maker, acceptor, *drawee* or other payor by or on behalf of the holder." (Italics supplied.)

Minn.St. 336.3–507(1) provides in part:

"(1) An instrument is dishonored when

"(a) *a* necessary or *optional presentment* is duly made and due acceptance or *payment is refused* or cannot be obtained within the prescribed time or in case of bank collections the instrument is seasonably returned by the midnight deadline (section 336.4–301) * * *." (Italics supplied.)

■ Defendant Winston Sandeen demanded payment of the drawee bank and was refused, thus the instrument was dishonored.[7] Unless we were to hold that time for tender was waived or on equitable principles to find that the extension was effected, the trial court must be upheld.

■ Plaintiff argues that a course of performance had developed between the parties which entitled him to rely on the defendants' negotiating the check by depositing it in their bank account. Were this the case, it could be construed as an agreement to extend the time for payment. The trial court specifically found, however, that no agreement required defendants to negotiate the check by depositing it rather than presenting it to the drawee and that no course of dealing existed. The trial court's finding is not clearly erroneous. It does not appear that there was any understanding between the parties regarding deposit of the check, but only that the defendants usually deposited checks in their own account. Minn.St. 336.1–205(1) provides:

"A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

On the state of the evidence presented at trial, a finding that there *was* a common basis of understanding would be clearly erroneous.

---

6. See also, Minn.St. 336.1–102(3).

7. If the bank wrongfully dishonored the instrument, plaintiff could have a cause of action against it. Minn.St. 336.4–402. Because plaintiff had deposited the checks 1 day previously, it is doubtful whether the bank had to honor the instrument in any case. Minn.St. 336.4–213. See, also, Bailey, Brady on Bank Checks, § 12.3 (4 ed. 1978 Cum.Supp. No. 1). Contrary to plaintiff's contention, a check presented to a drawee bank need not be endorsed by the payee for proper presentment.

3. *Equitable considerations.* Plaintiff lists 10 equitable considerations which he claims justified any untimeliness in his tender of payment. He further restates these considerations in his claim that this court should grant rescission of the option contract if it does not grant compensatory damages. The essence of the plaintiff's claim is that he was ready to perform in good faith; he retendered a certified check upon hearing of the dishonor; he intended to extend the option; and the dishonor was the fault of the bank. He further contends that defendants were acting in bad faith, were unjustly enriched, did not object to tender of a personal check, and made no effort to contact plaintiff after dishonor of the check. The trial court found that Mr. Sandeen refused to waive the August 1, 1975 payment date. It further noted that the agreement lapsed of its own terms, that defendants had no duty to notify plaintiff, and that plaintiff could have guarded against the risk taken by obtaining a certified check in the face of the refusal to waive the payment date.[8]

■ The general rule with regard to time of performance in option contracts is that time is of the essence. *Vogt v. Ganlisle Holding Co.*, 217 Minn. 601, 15 N.W.2d 91 (1944); see, also, *Brachmann v. Netzinger*, 293 Minn. 405, 196 N.W.2d 616 (1972); 1A Corbin, Contracts, § 273. This rule was expressly incorporated into the contract as originally drafted.

Plaintiff contends that the above cited cases are not controlling because they involved actual exercise of options, not extensions. Even if this distinction were tenable, the parties specifically made time of the essence in all phases of their contractual relationship. There was no allegation of fraud or overreaching in the drafting of the contract.

There is no evidence in the record that defendants agreed to any waiver of the payment date or of the time is of the essence clause. The trial court correctly found that timely payment by plaintiff had been demanded 2 years in a row. Sandeen testified that he told plaintiff to be sure the money was available on August 1 and that he was concerned over lack of funds to pay the check. Sandeen also testified that he wanted money in his account to pay taxes due in September. Mr. Sandeen's sense of relief over the option's lapsing does not, in itself, indicate bad faith; Merriman had been desiring to renegotiate and Sandeen was apparently unwilling to do so. Defendants were not unjustly enriched by the receipt of the first $65,000 because Merriman received what he had bargained for: the right to purchase the property.

It is noteworthy that plaintiff abandoned his claim for specific performance and sought only damages. This bears out the contention of defendants that plaintiff never did have the funds with which to extend the option and did not intend to purchase the property because there was evidence of his failure to do so. The trial court noted this in its memorandum where it said:

"Further, this court, even were it so inclined, would be unable to grant other relief to the plaintiff by reason of plaintiff's election to proceed upon his claim for compensatory damages and his abandonment of a prayer for the order of the court compelling acceptance of the tender and for specific performance."

The trial court therefore is affirmed.

OTIS and ROGOSHESKE, JJ., took no part in the consideration or decision of this case.

---

8. The court also noted that the plaintiff abandoned his request for equitable relief (specific performance). It is obvious that if the court had granted specific performance plaintiff would have been obligated to tender $120,000 to keep the option open at the time of trial.

Plaintiff cites 15 cases to support his claim for equitable relief. Each involves an action for specific performance of a land sales contract and is thus irrelevant to this action for damages under an option contract.