Mike MICHELSEN v. Willie Joe PATTERSON
and Diane PATTERSON, His Wife

CA 82-479                                    658 S.W.2d 413

Court of Appeals of Arkansas
Division I
Opinion delivered October 12, 1983

*James M. Thweatt,* for appellant.

*Lightle, Beebe, Raney & Bell,* for appellees.

DONALD L. CORBIN, Judge. The Chancery Court of Prairie County, Arkansas, terminated a lease agreement dated February 18, 1972, between appellant, Mike Michelsen and Jessie Mae Westbrook, who was the predecessor in interest to appellees, Willie Joe Patterson and Diane Patterson, his wife. We affirm.

The lease agreement called for a term of ten years with an option for an additional ten-year term. Annual lease rentals of $400.00 were to be paid commencing January 1, 1972, and, subsequently, on January 1 of each year during the term of the lease.

We have considered this lease once before and ruled that appellees had waived their right to refuse the late 1979 lease rental payments by their conduct in accepting two prior late rental payments. However, in its opinion, the Court of Appeals stated that appellees had not waived their right to enforce the provisions of the lease beyond the 1979 yearly rental payment. Appellees' attorney thereafter wrote appel· lant on November 25, 1980, the following letter:

> I am writing you on behalf of my client, Willie Joe Patterson, as a successor in interest of Ms. Jessie May Westbrook to inform you that Willie Joe Patterson requires strict performance of the agreement you entered into with Ms. Westbrook on February 18, 1972. From and after this date Willie Joe Patterson will require payment of all lease rentals on the day and date as specified in the agreement and will not accept any late payments whatever.
>
> You are formally notified by this letter that Willie Joe Patterson expects you to adhere to all of the terms and conditions of the agreement. For your convenience and information I am attaching a copy of the agreement to this letter.

Appellant advised appellees by letter dated June 9, 1981, that he intended to exercise his option for the additional ten-year term and would make payments on January 1 of each year. On June 17, 1981, appellees' attorney notified appellant by letter that, "No late payments of said rentals will be accepted."

The present dispute arose when appellee did not receive the 1982 rental payment until January 2, 1982. On December 31, 1981, appellant purchased a $400.00 cashier's check in favor of appellees and delivered it to the postmaster in Des Arc, Arkansas, in an envelope properly addressed to appellees with return receipt requested. January 1, 1982, was a legal holiday. These facts were undisputed by both parties.

Appellant urges us to reverse the trial court's decision that his lease rental payment was not timely made thereby

terminating the lease agreement. Appellant cites Ark. Stat. Ann. § 69-103 (Repl. 1979) and Ark. Stat. Ann. § 67-541 (Repl. 1980) for the premise that the lease payment date was a legal holiday which excuses payment on that date, and that appellant made timely payment by depositing the cashier's check in the U.S. mail before the due date. These two statutes relate to promissory notes and bank holidays, respectively, and have no bearing on the lease agreement at issue here.

The narrow issue in the instant case is whether the chancellor's finding that appellant's tender of the lease payment on December 31, 1981, which appellees did not receive until January 2, 1982, did not constitute a lease payment within the terms of the lease agreement was clearly erroneous (clearly against the preponderance of the evidence). ARCP Rule 52 (a); *Toney* v. *Haskins,* 7 Ark. App. 98, 644 S.W.2d 622 (1983).

The lease agreement here contained nothing regarding time as being of the essence. Even so, we think that there are facts and circumstances which clearly show that time was of the essence. We cannot say that appellant was without notice of this in light of the action taken by appellees in informing appellant that strict compliance with the terms of the agreement was required and that no late payments would be accepted whatsoever. In addition, appellant had previously litigated the matter of his making untimely payments and was well aware of the fact that appellees' prior waiver had no bearing upon future payments under the lease agreement. In the case of *Vernon* v. *McEntire,* 232 Ark. 741, 339 S.W.2d 855 (1960), which dealt with a contract for the sale of land, the Supreme Court quoted the applicable rule from an earlier decision as follows:

> Parties may enter into a valid contract relative to the sale of land whereby they may provide that time of payment shall be of the essence of the contract, so that the failure to promptly pay will work a forfeiture. (cites omitted). But the final effect of such an agreement will depend on the actual intention of the parties, as evidenced by their acts and conduct; and such a breach of the contract as would work a forfeiture may be

waived or acquiesced in. The law will strictly enforce the agreement of the parties as they have made it; but, in order to find out the scope and true effect of such agreement, it will not only look into the written contract which is evidence of their agreement, but it will also look into their acts and conduct in the carrying out of the agreement, in order to fully determine their true intent. It is a well settled principle that equity abhors a forfeiture, and that it will relieve against a forfeiture when the same has either expressly or by conduct been waived. The following equitable principle formulated by Mr. Pomeroy has been repeatedly approved by this court: "If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary." (cites omitted).

The rule relative to the inclusion of express language in a contract insofar as time as being of the essence is set out in *White* v. *Page*, 216 Ark. 632, 226 S.W.2d 973 (1950), as follows: "The contract in the case at bar did not state in express words 'time is of the essence'; but our cases hold that evidence may establish such fact in the absence of a specific statement in the contract." We believe that the chancellor properly looked into the acts and conduct of appellees in the carrying out of the lease agreement and correctly determined that by their notification of appellant in the form of two letters, time for payment was made of the essence. Appellant simply did not comply with this requirement. The following quotations from portions of the chancellor's letter opinion are pertinent:

Appellant received a letter dated November 25, 1980, placing him on notice that all lease payments would have to be made on the day and date specified in the agreement, i.e., January 1, as well as notice that adherence to all agreement terms was expected.

Appellant and his attorney received a letter dated June 17, 1981, giving further notice that no late payments would be received.

. . . .

Pursuant to the Court of Appeals decision, the appellees did not waive their right in the future to receive payments on January 1 of each year. Because of appellees' actions, the letters dated November 25, 1980, and June 17, 1981, were sufficient notice to appellant that the lease payment was to be made January 1.

. . . .

The Court in making its decision is not unmindful of the large number of cases which hold that an offer is accepted when the acceptance is placed in the mails (properly addressed, sufficient postage, etc.) prior to knowledge of a withdrawal of the offer. The Court is also aware of a number of cases that hold that a contract or offer may contain certain conditions and those conditions must be met before there is a binding agreement.

In holding that appellant's tender of the lease payment was not timely, we believe it is necessary to emphasize that the decision is limited to the particular facts and circumstances of this case. We are equally mindful of the "mailbox rule" which the chancellor referred to in his opinion. *Kempner* v. *Cohn*, 47 Ark. 519, 1 S.W. 869 (1886). Appellant has cited cases, all of which are from other jurisdictions, for the proposition that where payment of an obligation by mail is authorized, the mailing of a letter including remittance which is properly addressed and with postage prepaid on the last day of payment is a timely payment. See, for example, *Fant* v. *Miller*, 218 S.W.2d 901 (Tex. Civ. App. 1949); *McGowan* v. *Pasol*, 605 S.W.2d 728 (Tex. Civ. App. 1980); *Mutual Reserve Fund Life Ass'n* v. *Tuchfeld*, 159 F. 833 (6th Cir. 1908); *McCluskey* v. *National Life Ass'n of Hartford*, 28 N.Y.S. 931 (1894); 60 Am.Jur.2d *Payment* § 17 (1964). Research for this proposition in Arkansas caselaw

indicates that it has never before been addressed or reached and, therefore, we decline to rule upon it as it is not necessary under the facts of this particular case.

Affirmed.

MAYFIELD and COOPER, JJ., agree.