The Honorable Bill Stovall State Representative 2324 Heber Springs Road West Quitman, AR 72131-9426
Dear Representative Stovall:
This is in response to your request for an opinion on a question that I will paraphrase as follows:
 For the purpose of assessing late fees, may a utility company calculate the date of payment using the actual date of receipt or is the utility company obligated to consider the postmark date as being the date of receipt.
RESPONSE
The answer to your question will turn on the terms of the contract between the utility company and the ratepayer.[1] If the contract expressly dictates that payment will be deemed made only upon receipt, that contractual provision will control. Neither the Arkansas courts nor the legislature have yet addressed whether payment will be deemed made as of the date of mailing in the absence of such a provision.
As the Arkansas Court of Appeals noted in Tri-State Insurance Co. v. B L Products, Inc., 61 Ark. App. 78, 85, 964 S.W.2d 402 (1998):
 "It is axiomatic that, to determine the rights and duties under a contract, we must determine the intent of the parties. . . . It is well settled that the intent of the parties is to be determined from the whole context of the agreement; the court must consider the instrument in its entirety."
(Quoting Hartford Insurance Co. v. Brewer, 54 Ark. App. 1, 3,922 S.W.2d 360 (1996).) This office is neither equipped nor authorized to conduct this type of factual inquiry.
Implicit in your request is a suggestion that, as a matter of Arkansas law, a utility payment must be deemed paid as of the date it is mailed. However, neither the legislature nor any Arkansas court has ever committed to this proposition. Your suggestion is a variant of what in contract law is known as the "mailbox rule," which the Arkansas Supreme Court discussed as follows in Equity Fire Casualty Co. v. Traver,330 Ark. 102, 105, 953 S.W.2d 565 (1997):
 In Kempner v. Cohn, 47 Ark. 519, 1 S.W. 869 (1886), we recognized the mailbox rule for the acceptance of a contract. Once an offer has been made, a contract is completed when the acceptance is mailed if the acceptance is made in a reasonable amount of time. If a letter of withdrawal is mailed before the mailing of the acceptance, it is effective only if the party to whom the offer was made receives the withdrawal before making the acceptance. Id.
 Despite the fact that this case was decided in the 1800s, there are few cases following it which expound upon this theory. The Kempner decision has been followed as a routine matter of contract theory, with the proviso that parties are free to dictate the terms of offers and acceptances as they deem necessary.
As this passage suggests, the mailbox rule deals primarily with the issue of whether the parties have actually entered into a contract by exchanging a valid offer and acceptance. However, the court in Traver
suggested the rule might further apply to determine that a payment owed under a contract is deemed made upon mailing:
 In Michelsen v. Patterson, 9 Ark. App. 275 (1983), the court of appeals addressed a situation where a tenant mailed his rent on December 31, 1981, and it was received by the owner on January 2, 1982. The rent was due on January 1, 1982, and this day was a legal holiday. The owner refused the payment, and the tenant sought a court order deeming the payment timely under the mailbox acceptance rule. The court of appeals determined that the express language of a contract making time of the essence can eliminate the application of the mailbox acceptance rule. While there was no express language in the contract between the two parties, the tenant had received two letters during the year in which the owner indicated that no late payments for rent would be accepted and notified the tenant that strict adherence to all terms of the agreement was expected. The court of appeals found that these two correspondences were enough to put the tenant on notice that time was of the essence and a delay in receiving the payment was a breach of the contract. The court of appeals affirmed the finding that the payment was not timely; however, this decision was limited to the particular facts of the case.
330 Ark. at 105-06.
This summary of Michelsen might be read as suggesting that in the absence of circumstances establishing that time is of the essence, the mailbox rule will apply to render the payment made as of the date of mailing. This suggestion should be considered in conjunction with what appears to be a similar suggestion in Hare v. Illinois Bankers Life Assurance Co.,199 Ark. 27, 28, 132 S.W.2d 824 (1939), in which the Arkansas Supreme Court offered the following analysis of whether an insurance premium had been tendered in timely fashion:
 The January (1938) premium was due Wednesday, the fifth. Allowing for grace [a contractually negotiated grace period of 30 days to cure a default], it could have been paid as late as Saturday, February fifth. On February fifth appellant issued his check on the Bank of Delight and mailed it to appellee. It was received February 7. Due to the circumstance of its having been mailed within the grace period, appellee waived the default of two days during which time the check was in transit. . . .
This passage suggests without discussion that the date of mailing should be considered the date of payment unless the contract contains a provision to the contrary.[2]
However, notwithstanding the court's contrary suggestion in Traver, the court in Michelsen expressly refused to address whether the mailbox rule applies to payments due under the Arkansas law of contracts:
 In holding that appellant's tender of the lease payment was not timely, we believe it is necessary to emphasize that the decision is limited to the particular facts and circumstances of this case. We are equally mindful of the "mailbox rule" which the chancellor referred to in his opinion. Kempner v. Cohn, 47 Ark. 519, 1 S.W. 869 (1886). Appellant has cited cases, all of which are from other jurisdictions, for the proposition that where payment of an obligation by mail is authorized, the mailing of a letter including remittance which is properly addressed and with postage prepaid on the last day of payment is a timely payment. See, for example, Fant v. Miller, 218 S.W.2d 901
(Tex.Civ.App. 1949); McGowan v. Pasol, 605 S.W.2d 728
(Tex.Civ.App. 1980); Mutual Reserve Fund Life Assn v. Tuchfeld, 159 F. 833
(6th Cir. 1908); McCluskey v. National Life Assn of Hartford,
28 N.Y.S. 931 (1894); 60 Am.Jur.2d Payment 17 (1964). Research for this proposition in Arkansas caselaw indicates that it has never before been addressed or reached and, therefore, we decline to rule upon it as it is not necessary under the facts of this particular case.
9 Ark. App. at 280-81. The court in Michelsen consequently did not consider Hare precedent on this issue.
The passage just quoted clearly establishes that the Arkansas courts have yet to determine whether the mailbox rule will apply to render a payment timely in the absence of a contractual provision defining payment as receipt. In my opinion, the dictum in Traver summarizing the ruling inMichelsen does not constitute any resolution of this issue. Given the absence of legislative or judicial guidance regarding the potential applicability of the mailbox rule, I am unable to answer your question. Moreover, even assuming the mailbox rule were a tenet of Arkansas law applicable to payments owed under contract — a proposition I believe has yet to be established — only a court could determine whether the terms of a particular contract precluded application of the rule.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The terms of that contract will of course largely be those dictated or approved by the Public Service Commission or a municipal body with regulatory authority. See, e.g., A.C.A. § 23-4-101 (granting regulatory power to set utility rates). Nevertheless, in agreeing to accept service subject to these approved terms, the customer is clearly entering into a contractual relationship with the utility.
[2] This suggestion by the court is in all likelihood dictum, given that the court affirmed the trial court's judgment for other reasons.